[No. 3958.    Decided March 4, 1902.]

# JOHN HERRMAN, *Appellant*, v. GREAT NORTHERN RAILWAY COMPANY, *Respondent.*

APPEAL — TWO STATEMENTS OF FACT — CERTIFICATION OF BOTH.

Where a statement of facts proposed by appellant and an amended statement proposed by respondent, are certified by the trial court as together containing the matters and proceedings occurring in the cause, the supreme court will treat the combined statements as constituting properly a part of the record, especially when no objection was made in the court below against both proposed statements being made a part of the record.

SAME — SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.

Where the testimony is conflicting, the verdict of the jury should not be disturbed, unless it appears that the court has submitted the case under instructions which embody an erroneous view of the law.

CARRIERS — SALE OF TICKETS BY BROKER — UNSAFE APPROACHES TO TICKET OFFICE — LIABILITY OF CARRIER — BURDEN OF PROOF — INSTRUCTIONS.

In an action by an intending passenger to recover damages for injuries received because of the defective condition of depot grounds, where the evidence showed that the ticket agent was not the employee of defendant, but of another company who owned the premises, an instruction that a railway company which places its tickets in the hands of another for sale would not necessarily be required to keep the premises where such persons might conclude to sell such tickets, or the approaches to such places, in repair, was erroneous, on the ground that it placed the burden upon the ticket purchaser to first ascertain whether he was dealing with a broker or with an agent of defendant, before he might assume that defendant was bound to furnish a safe approach to and from its depot.

SAME — UNION DEPOT GROUNDS — USE BY CARRIER — LIABILITY FOR UNSAFE APPROACHES.

A railway company which uses and occupies premises for depot purposes is not relieved from liability for the unsafe condition of the approaches to such premises by the mere fact that another may own and control the depot grounds.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*Mount & Merritt* and *Hand, Taylor & Graves,* for appellant.

*Will H. Thompson* and *Merritt J. Gordon,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This is an action for damages brought by appellant against respondent. The complaint alleges that the respondent is in the possession of a certain depot and depot grounds within the city of Spokane, which it operates and controls, on the line of its railroad passing through said city; that the respondent, for its own convenience, and for the convenience of its passengers, did, on the 13th day of December, 1898, maintain a sidewalk upon its said line of road, and in front of said depot; that on said date the respondent negligently and carelessly permitted snow and ice to accumulate and remain upon said walk, and in front of said depot, and carelessly and negligently permitted its engines to exhaust steam upon said snow and ice, and thereby caused said walk to become slippery and icy on top of the snow, and dangerous to the public and persons having business with respondent at that place; that at about the hour of 6 o'clock in the evening of said day appellant, desiring to travel upon respondent's regular passenger train going east, went to said depot for the purpose of purchasing a ticket for passage upon said train, and that upon inquiry he was informed by the agent in charge of the depot that the train would not leave until the next morning, and thereupon he purchased a ticket for passage over respondent's road from Spokane to Milan, Wash., and at

once left the depot for the purpose of going to his lodging in the city of Spokane; that while walking upon said sidewalk on the depot grounds in a careful manner, being compelled to walk upon the snow and ice which had accumulated as aforesaid, he, without any fault of his own, slipped upon the snow and ice, and was violently thrown to the ground, falling in such a manner as to sprain and bruise the ankle of his left leg and break the bones thereof, by reason whereof he was unable to stand upon his feet, and it became necessary that he should be taken from said place to the hospital in Spokane for treatment, which was done; that the said injuries were and are permanent, and by reason thereof appellant will be permanently crippled for life; that he was confined to his room in the hospital for about thirty-five days, and has suffered, and now suffers, great physical and mental pain by reason of said injuries, and is thereby permanently disfigured and deprived of the power he would have had but for said injuries to engage in profitable employment during the remainder of his life; wherefore he asks recovery in damages.    The answer of respondent denies the allegations of the complaint, and further affirmatively pleads contributory negligence on the part of appellant, and alleges that appellant was a trespasser upon the property described in the complaint, and had no right to be thereon at the time mentioned in the complaint; that he was not invited by the respondent to pass along the place where he claims to have been injured, and that respondent owed him no duty whatever in respect to any of the matters alleged in the complaint; that whatever risk there may have been or which attended his passing along the premises described in the complaint, was a risk which the plaintiff well knew, and could have, by the exercise of ordinary care and caution, avoided.    The cause

was tried before a jury, resulting in a verdict for respond-
ent. Appellant moved for a new trial, which was denied,
and judgment was thereupon entered that appellant shall
take nothing by his said action, and that respondent shall
recover its costs. From said judgment this appeal was
taken.

Respondent moves to strike the statement of facts, for
the reason, as urged, that the court has settled two separate
and complete statements which are inconsistent and con-
flicting with each other. From the record it appears that
appellant duly filed a proposed statement. The evidence
is not set out in the form of questions and answers as taken
by the stenographer, but is set forth in narrative form, and
purports to contain all the material facts, matters, and pro-
ceedings which occurred at the trial. In due time respond-
ent filed what is denominated an amended statement of
facts, proposed by respondent as a substitute for the orig-
inal statement proposed by appellant. In the latter pro-
posed statement the evidence is also set out in narrative
form, and purports to be a complete statement of all the
evidence, and of all that occurred at the trial. The certifi-
cate of the court is to the effect that the matters and pro-
ceedings embodied in the appellant's proposed statement,
and in the respondent's proposed amended statement, com-
bined, are matters and proceedings which occurred in the
cause, and they are made a part of the record. The court,
in its certificate, also refers to the combined statements as
"the foregoing statement," thus treating them as a unit,
and as comprising one statement in the case. Respondent
contends that appellant's proposed statement is distorted,
garbled and incomplete; and appellant makes a like charge
against the amended statement proposed by respondent. It
is manifest that this court has no means of determining the

accuracy of the respective contentions, and must rely upon the certificate of the trial court. That certificate recites, in effect, that the contents of each of the proposed statements are truthful accounts of matters which occurred at the trial, and both are therefore approved and made a part of the record. It was doubtless the court's view that omissions in one proposed statement were supplied by the other. In any event, respondent's motion to strike the whole statement as settled seems to us inconsistent, since the motion includes respondent's own proposed amended statement, submitted by itself for certification, which purports to be complete in itself, and which the court has made a part of the record. Moreover, we are unable to find in the record any objection made in the court below to the signing of the court's certificate as it was signed, making both proposed statements a part of the record. For the foregoing reasons we must treat that which the court has. made a part of the record as constituting the statement of facts for the case, and the motion to strike is denied.

The assignments of error are based upon the court's instructions, and upon its refusal to instruct as requested by appellant. Counsel differ materially as to the law applicable to the facts in issue in this case. The testimony discloses that the appellant is a farmer, who resides in the country, seventeen miles distant from Spokane. On the day he received his injuries he drove a team of horses from his home to Spokane, expecting to attend to some business there, attend a lodge in Spokane that night, and the next day drive with his team from Spokane to Milan, Wash., where he desired to attend to some business. On the way to Spokane one of his horses became lame, and upon reaching there he took his team to a stable and decided to leave

them there and go to Milan the next day by the respondent's railroad. He inquired of persons at the stable at what time the train would leave for Milan, but they were unable to inform him. He then went to the depot to ascertain the time the train would leave. He inquired of the agent in charge at the depot, who informed him that the train would leave about 8 o'clock the next morning. He then asked the agent for a ticket to Milan, and purchased from him at that time a round-trip ticket from Spokane to Milan. He immediately passed out of the depot building, and was returning by way of the sidewalk before mentioned when he received the injuries aforesaid. The evidence also disclosed that the depot and grounds thereto attached did not belong to the respondent company, but did belong to a corporation known as the "Union Depot Company of Spokane Falls." The property of the Union Depot Company consisted of the depot with platform and walks, and some tracks and side tracks. At the time appellant received his injuries the property of the Union Depot Company was in charge of a receiver acting under direction of the United States circuit court. By arrangement between the respondent company and said receiver, the passenger trains of respondent arrived and departed from said depot, and the passengers, baggage, and express matter of said trains at Spokane were received and discharged at said depot. The agent in charge, and who sold appellant his ticket, was employed by the receiver, and sold tickets for passage over respondent's line, and also over other lines using the same depot, as well as over all other railway lines in the country. No other agent was stationed at said depot to sell tickets over respondent's line. The evidence is conflicting as to the condition of the sidewalk at the time. Respondent's witnesses testified that

it was kept clear of snow and ice, while appellant's testimony is supported by that of other witnesses.    We will not inquire into this conflict of testimony, but will leave that to the jury, since it belongs to them to determine that matter.    The verdict should not be disturbed unless it appears that the court has submitted the case to the jury under instructions which embody an erroneous view of the law.

It is the contention of respondent that it was not in possession or control of the depot premises at the time; that the ownership of the premises was in another company, and the possession and control thereof were in a receiver of that company, who was operating it as an independent property, distinct from the management and operation of respondent's railroad; that the respondent had no agent in charge, and had no connection with the premises other than to receive and discharge at that place its passengers, baggage, and express matter; that respondent's duties and relations to the public and its patrons at that place were confined to the times of the arrival and departure of its trains, and that, since the appellant did not go there with the purpose of taking the train at that time, but only to ascertain the time the train would leave, and to purchase a ticket from the agent of the depot company, his business was therefore entirely with the depot company, and no negligence can be attributed to respondent for the condition of the premises at that time.    It is further urged that respondent was under no obligation to sell its own railroad tickets, but had the right to place such tickets in the hands of any person or corporation, and that such person or corporation undertaking the sale of such tickets must assume the duty of providing safe premises for the sale of the same, and under such circumstances respondent is under no duty to a ticket purchaser upon which negligence as to the condition

of the premises where tickets are sold can be founded.
This view seems to have been adopted by the trial court.
The court gave the following instructions:

"Any person or corporation selling or offering to sell to
the general public any article, such as a railroad ticket,
assumes the duty of providing, during reasonable business
hours, reasonably safe premises upon which to transact
such business, and, if necessary, reasonably safe ways to
and from said place of business."

"I charge you, however, that the defendant did not
necessarily have to sell its own railroad tickets, but had
the right to place its said tickets for sale in the hands of
any person or corporation who, under such circumstances,
would assume the duty of providing safe premises for the
sale of same. If you should find from the evidence that at
the time plaintiff was injured, if he was injured, his only
business at said depot was to buy a railroad ticket for a trip
on defendant's road, and you should further find from the
evidence that said tickets were then and there being sold
by some other person or corporation, then and in that case
the plaintiff cannot recover from the defendant, and you
should find for the defendant."

"A railway ticket is property which may be lawfully
sold by any one in whose hands it is placed by the railway
company with authority to dispose of the same, and the
railway company will not necessarily be required to keep
the premises where such persons may conclude to sell such
tickets, or the approaches to such places, in repair. I in-
struct you that the mere fact, if it is a fact, that the defend-
ant railway company allowed a receiver of the United
States court, by himself or by his agent, to have possession
of the defendant company's tickets, and to sell them to per-
sons desiring to take passage upon its railway line, would
not of itself necessarily make it a duty of the defendant
railway company to keep the premises occupied by the re-
ceiver in the sale of such tickets, or the walks or approaches
to the place where such tickets were so sold by such re-
ceiver or his agents, in repair."

The foregoing instructions would undoubtedly be correct as applied to a mere ticket broker, and to one purchasing from him who had knowledge that he was only such broker. It will be observed that the instructions are wanting in any requirement that the purchaser shall have knowledge that he is dealing with a broker only.   One dealing with a broker, knowing him to be such broker only, and as selling tickets upon his own account, could certainly not charge respondent with negligence for not providing safe premises at the place where he applies to purchase a ticket.   Here is a case, however, where a railroad company uses a depot, the walks around it, and the approaches thereto.   It stops its trains, unloads and receives its passengers, baggage, and express there, and its tickets are there kept on sale.   Under such circumstances the person at the ticket window, and who has charge of the sale of tickets, may be an agent, or he may be a mere broker, but knowledge that he is a mere broker should be brought home to the purchaser.   It is a matter of common knowledge that it is the ordinary rule for a railroad company to maintain depots where its tickets are kept on sale at a ticket window, and one desiring to purchase a ticket for passage over respondent's line, seeing some person at the ticket window in the depot where respondent's trains are accommodated, would naturally suppose   that such person was the agent of the company whose tickets he was selling, and would not suppose, without actual knowledge, that such person was a mere broker, and not the agent of respondent.   The above instructions, therefore, place the burden upon the ticket purchaser and patron of respondent to first ascertain whether he is dealing with a broker or an agent of respondent, before he may assume that respondent is obligated to furnish a safe approach to and from its depot over which he must travel when he

wishes to purchase a ticket. Such a rule we do not think is just or reasonable, and we, therefore, think the instructions erroneous in the particular mentioned. In *Turner v. Great Northern Ry. Co.,* 15 Wash. 213 (46 Pac. 243, 55 Am. St. Rep. 883), it was held that a ticket seller in a union depot, whose business it is to sell tickets over various lines of railway whose trains enter and depart therefrom, is such an agent of any company furnishing tickets to be sold there which are accepted by the conductors of its trains as its tickets, that the company is bound by any of the declarations of such ticket seller as to the running of its trains.

The evidence shows, and respondent so concedes in its brief, that appellant went to the depot for the purpose of ascertaining at what time the train would leave, and also to purchase a ticket. He had made inquiry up-town as to the train time, but, not getting the desired information, what was more reasonable than that he should go to the depot from which the train would start, in the expectation that some one representing the respondent company would there give him authoritative information? Again, from whom could be expect more accurate information upon that subject than the person at the ticket window? He sought the information from that person, received it, and then purchased his ticket. It is certainly reasonable that some one should be stationed at the place where respondent's trains arrive and depart to give information to the public upon as important a matter as the time of the arrival and departure of trains. If the ticket agent was in no sense the agent of respondent, but only the agent of the receiver of the depot company, then from whom could appellant have procured authoritative information upon so important a subject? Certainly the relations of

respondent to the public must be such that some one in charge is authorized to speak, and who can more properly do so than the person who sells the tickets and receives the money which is the consideration for the patron's passage over the line? Appellant sought authoritative information, which could only be had from some one having authority to speak for respondent, and such a one he might reasonably expect he would find at the depot. To that extent, at least, it would seem that his business at the depot was with the respondent company, and not with the depot company, or its agent, as a ticket broker. The real question is, is the respondent liable to its patrons for the negligence of the Union Depot Company to keep the premises used by respondent reasonably safe where the depot company has control of the premises, but which by common consent are used as a depot for passengers, express, and baggage business by the respondent company? As bearing upon this subject the court further instructed the jury as follows:

"You are instructed that if you find from the evidence in this case that the sidewalk or platform upon which plaintiff fell and was injured, if you find that he did fall and was injured, was at that time in the exclusive possession and control of the receiver of the United States court, then your verdict must be for the defendant. You are instructed that the gist of this action is negligence; that is to say, the plaintiff charges that the defendant carelessly and negligently permitted snow and ice to accumulate upon a sidewalk, platform, or approach to its depot in the city of Spokane, and I charge you that unless you find from the evidence that the defendant was at that time in the possession and control of such sidewalk, platform, or approach, then your verdict must be for the defendant. You are instructed that, to entitle the plaintiff to recover in this action, it is not enough that you should believe from the evidence that the plaintiff, at or about the time alleged in the complaint, fell upon the sidewalk, platform, or approach

mentioned in the complaint in this action, and was injured thereby, unless you further find that the plaintiff was at that time exercising ordinary and reasonable care for his own safety, and also that his fall was a result of the snow and ice upon the platform or approach at the place where the plaintiff sustained such fall; and also that such sidewalk, platform, or approach was, at the time plaintiff fell, within the possession or under the control of the defendant."

Thus it will be seen that the court left the jury to find for the respondent if they found that the premises were under the control of another, without regard to whether respondent used the premises for its depot purposes. This, we think, was error. In *Cogswell v. West St, etc., Ry. Co.*, 5 Wash. 46 (31 Pac. 411), this court, at page 51, said:

"It is a well-established principle of the law governing common carriers which obtain certain rights or franchises from the public by either special or general legislation on the part of the state or municipal corporations, and upon whom in return therefor are cast the burden of certain duties, that they cannot, by means of any lease or other contract for the operation of their means of transportation or the management and control of their tracks and right of way, relieve themselves from liability for violations of contracts or the public law, or for torts committed by their lessees or the parties with whom they specially contract."

Again, on pages 52, 53, the court further said:

"Out of a great number of cases which were cited to our attention by both sides, we find but two which are directly pertinent upon this point. The first is *Cunningham v. International Railroad Co.*, 51 Tex. 503. In that case a passenger was carried by a construction train operated by independent contractors for the building of the road, without the knowledge of the railroad company, and against its express prohibition, and it was held that the railroad company was not liable. The other case is that of *Lakin v. Willamette, etc., R. R. Co.*, 13 Ore. 436 (11 Pac.

68), which is a case on all fours with this one, with the exception that there the railroad was an ordinary steam railroad. The court said: 'The defendant may contract for the construction of its road, but it cannot escape liability for injuries to passengers caused by the negligence of another which it permits or allows to use its road for the purposes of traffic. In such case, as regards the public, those who operate the road must be regarded as the agents of the corporation. This doctrine is in accordance with sound public policy; for it would certainly be against the public interest to allow corporations, invested by the state with important franchises and privileges, and incorporated to discharge a public duty as well as to subserve a private benefit, to shirk its responsibilities or shift its duties and liabilities to other, perhaps, irresponsible parties. Except as authorized by statute, it cannot relieve itself from responsibility for the exercise of its corporate powers and franchises.' The two cases referred to, it seems to us, express the correct principle applicable in such instances, and under that principle there was no error on the part of the court as to the point in discussion."

The defense in the above case was that of negligence of a construction company employed to equip the road with electric appliances, but passengers were being carried upon the same car that carried the construction material, and it was held that the company could not be relieved from liability because the negligence was primarily that of the construction company. Culling from the first quotation the statement of a general principle which seems particularly applicable here, we have the following:

"They cannot by means . . . of any . . . contract for the operation of their means of transportation . . . relieve themselves from liability for violations of contracts or the public law, or for torts committed by . . . the parties with whom they specially contract."

Respondent had a contract or arrangement with the depot company by which its "means of transportation"

were to be operated upon the depot premises. To those premises the traveling public were invited and induced by respondent to come and take passage upon its cars. Whether it kept one it called its own agent to sell tickets there or not, yet the fact remains that the public were invited and induced to come there. The tickets were there to be sold, and the ordinary traveler would expect to buy his ticket upon those premises, and without knowledge to the contrary would suppose that in so doing he was dealing directly with respondent through its duly authorized agent. For all the purposes of operating its means of transportation upon those premises and of dealing with the public as is usual at a railroad depot, the respondent was the occupant of the premises, whatever may have been its contract or arrangement with the depot company. In the case of *Bennett v. Railroad Co.,* 102 U. S. 577, 580, the court said:

"The facts disclosed by the pleadings, and by the demurrer conceded to exist, seem to bring this case within the rule—founded in justice and necessity, and illustrated in many adjudged cases in the American courts—that the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons,—they using due care,—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

There a railroad company and a steamboat company used the same premises for depot and landing purposes. A passenger in going to take a steamboat at night was injured by reason of negligently kept premises. The premises belonged to the railroad company, but the passenger's business at that particular time was not with the railroad

company, but with the steamboat company upon whose steamer he then sought passage. The railroad company was held liable, within the principle above stated, that by invitation, express or implied, it induced the public to come upon the premises. Likewise did the respondent in this case, by its relations to the depot premises as an occupant for traffic purposes, invite and induce its patrons to come upon those premises; and it therefore came within the above rule. The same principle would doubtless have been applied to the steamboat company in the case cited as an occupant and user of the premises for traffic purposes, although not the owner; but the relief seems to have been sought against the railroad company alone.

Respondent is not relieved from liability on account of unsafe premises because the premises may at the time have been under the control of a receiver of the depot company. Respondent used the premises voluntarily, and it became its duty to provide a reasonably safe place for its patrons. If the receiver neglected to maintain safe premises, his negligence became the negligence of the respondent, because in law he was the agent of respondent, whose duty it was to maintain safe walks upon its depot grounds. In *Pennsylvania Railroad Co. v. Roy,* 102 U. S. 451, a passenger purchased from a railroad company a ticket over its line, and at the same time from a palace car company a ticket entitling him to a berth in one of its sleeping cars constituting a part of the train of the railroad company. In the course of transportation he was injured by the falling of a berth in the sleeping car in which he was at the time riding. It was held that, for the purposes of the contract with the railroad company for transportation, and in view of its obligation to use only cars that were adequate for safe conveyance, the palace car company, its conductor

and porter, were in law the servants and employees of the railroad company, and that the negligence of either of them as to any matters involving the safety or security of passengers was that of the railroad company. In *Railroad Co. v. Brown,* 17 Wall. 445, where a railroad company was being operated jointly by a receiver of a part of it and by a lessee as to the remaining part, the railroad company was held liable for injuries committed by a servant of the parties working it upon the person of a passenger whom such servant improperly expelled from a car into which the passenger had entered, the railroad corporation having allowed tickets to be issued in its own name in the same form as it had done before the road was leased, and the passenger, for aught that appeared, not knowing that the railroad corporation was not itself managing the road. In *Pennsylvania Co. v. Ellett,* 132 Ill. 654 (24 N. E. 559), it was held, where a railway company allows another company to use and operate its road, no other negligence than that of the corporation using the track need be alleged or proved in order to fix the liability of the owner company. The negligence of the lessee company is treated the same as its own. In *Montgomery & E. Ry. Co. v. Thompson,* 77 Ala. 448 (54 Am. Rep. 72), it was held that all the property of a railroad company, including its depots and adjacent yards and grounds is its private property, on which no one is invited or can claim the right to enter except those persons who have business with the railroad, which class embraces, not only passengers, but protectors and friends attendant upon their departure or awaiting their arrival; that to the class of persons thus having business the railroad company is under obligation to keep in safe condition all parts of its platforms, with the approaches thereto, to which the public do or would naturally

resort, and of the portions of the station grounds reasonably near to the platform where passengers would be likely to go, and to provide safe waiting rooms, and to keep the depot and platform well lighted at night. A building in the city of Montgomery, known as the "Union Depot," with the yards or grounds annexed, was the property of the two railroad companies known as the South & North Alabama and the Louisville & Nashville, but the Montgomery & Eufaula Railway Company, having acquired by lease the right to use the property in common with the others for the arrival and departure of its trains, with the use of its waiting rooms, ticket office, baggage room, etc., was held to be liable to passengers and the public generally in relation to the property as if it were the owner in fee. It is true it was held that the plaintiff in that case could not recover because of his contributory negligence, but the principle announced by the court is particularly pertinent to the discussion here. It thus seems clear that, as between respondent and its patrons and those having business with it at said depot, the duty rested upon respondent to see that the depot premises were safe as fully as though the premises had been owned by respondent. That such is the duty of a railroad company owning and using the premises there can be no doubt.

"A railroad corporation is bound to make the approaches to their own depots and premises safe and convenient for passengers, and the public having business at such premises; and is bound to keep the same, and their landing places, in a resonably safe condition for the convenient use of all who use their cars as a means of conveyance, and others who have a rightful occasion to resort there." 1 Rorer, Railroads, 476.

Numerous cases are cited by the author. See, also: *Buenemann v. St. Paul, M. & M. Ry. Co.*, 32 Minn. 390

(20 N. W. 379); *Collins v. Toledo, etc., Ry. Co.,* 80 Mich. 390 (45 N. W. 178); *Cross v. Lake Shore & M. S. Ry. Co.,* 69 Mich. 363 (37 N. W. 361, 13 Am. St. Rep. 399); *Texas & P. Ry. Co. v. Reich* (Tex. Civ. App.) 32 S. W. 817.

We therefore think the instructions of the court heretofore set out were erroneous in the particulars herein discussed. The jury should have been instructed to the effect that respondent is not relieved from liability by the mere fact that another may have owned and controlled the depot premises; that if the respondent used and occupied the premises for depot purposes the duty rested upon it to see that such premises were safe.

The judgment is therefore reversed, and the cause remanded, with instructions to the court below to grant the motion for a new trial, with costs taxed against respondent.

REAVIS, C. J., and FULLERTON, DUNBAR, ANDERS and WHITE, JJ., concur.