[No. 4305. Decided July 25, 1902.]

ADMIRAL N. OWEN, *Appellant*, v. WASHINGTON AND
COLUMBIA RIVER RAILWAY COMPANY, *Respondent*.

CARRIERS — INJURY TO PASSENGERS — DUTY TO LIGHT DEPOT PREM-
ISES.                                          :

A railroad company cannot excuse its failure to comply with
its primary duty to properly light its depot premises by showing
that it had procured the city to maintain lights in the vicinity,
and that the unlighted condition of the premises at the time of
an accident was due to the fact that the city lights suddenly
and unexpectedly went out.

SAME — CONTRIBUTORY NEGLIGENCE — ALIGHTING ON SIDE OPPOSITE
PLATFORM.

It is not negligence *per se* for a passenger to get off a train
on the side opposite the platform, but such fact is a question for
the jury, to be considered in connection with the circumstances
of the particular case.

SAME — NON-SUIT.

In an action to recover damages for injuries resulting from de-
fendant's negligence in failing to properly light its depot prem-
ises, the refusal to grant a non-suit was proper, where the evi-
dence showed that plaintiff was ninety-one years of age, that
he got off the car on the side opposite the platform on the sug-
gestion of the conductor, that he objected that there was no plat-
form there and was directed by the conductor how to reach
the platform from that point, that he started down the yard to
get around the train and became lost in the darkness, that he
came to a platform, crawled upon it, and was feeling his way
along it, when he fell over the edge and received the injuries com-
plained of.

Appeal from Superior Court, Walla Walla County.—
Hon. THOMAS H. BRENTS, Judge. Reversed.

*Garrecht & Dunphy,* for appellant.

*B. S. Grosscup* and *W. T. Dovell,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This suit was brought by appellant against respondent to recover damages for personal injuries. On the 7th day of July, 1900, appellant purchased a ticket from respondent for a round trip passage over its railroad from Walla Walla to Waitsburg. A political meeting was held at the latter place in the evening of the same day, and appellant, together with a large number of other persons, took passage upon the same train, bound for Waitsburg, for the purpose of attending said meeting. The train carrying these passengers on the return trip reached Walla Walla near midnight of the same day, and stopped in front of respondent's passenger depot in said city. It is alleged in the complaint that the night was dark, and that appellant, not knowing upon which side of the train the depot platform stood, alighted from the train on the side away from the depot platform, and thereafter the train moved away; that there were no lights visible in or about the depot or the platform, or the tracks in front thereof, and no person was in attendance thereabout; that appellant was unfamiliar with the premises, knowing only that there was a platform between the depot and tracks, and he was unable, on account of the extreme darkness, to locate the platform with reference to the place of his exit from the train; that by reason of the darkness he could not see the depot or platform, and supposing them to be in a certain direction, and knowing of no other way, walked carefully and at a slow gait in the supposed direction of the depot and platform, until he found a platform which surrounds the freight house, which is about thirty feet from the passenger platform,

and which appellant supposed to be said platform; that he walked slowly and carefully thereon in what he supposed and believed to be the direction of the public highway, knowing of no other way, when, without notice or warning, he stepped off the platform and fell to the ground, a distance of two and one-half feet, thereby sustaining great injuries, towit, the knee cap of his left leg was broken and shattered, and his left shoulder was badly bruised. It is alleged that the injuries were due to the negligence of respondent in failing to have the depot and platform and the tracks in front thereof lighted, and also in failing to provide servants to safely guide passengers from the train to the passenger platform. The answer denies the material allegations of the complaint, and alleges contributory negligence. A trial was had before a jury, which resulted in a verdict in favor of respondent, the defendant below. Judgment was entered that appellant shall take nothing by his action, from which he has appealed.

The errors assigned are based upon the instructions of the court, and upon its refusal to grant the motion for a new trial. The court properly instructed the jury that it is the duty of a railroad company to provide safe and convenient means of approach to its stations for all persons taking passage upon or departing from its trains, and that this duty includes that of properly lighting its depot platforms at night; that the lights must not only be adequate to show the way to and from the cars and station to people already familiar with it, but such as will show it plainly to any one of ordinary eye-sight, though a stranger to the surroundings, so that by the exercise of his natural faculties of vision he may see it without difficulty. In addition to the above, the court added:

14—29 Wash.

"But if a light had been provided which was sufficient for the purpose by the city, which, without defendant's fault, suddenly and unexpectedly went out, and the defendant was guilty of no negligence in that regard, it would not be held responsible therefor."

It will be observed that the latter portion of the quoted words suggests the condition that there must be no negligence of respondent in regard to lights, in order to avoid liability; but the preceding words leave it to be inferred, at least, that, if the city had provided a sufficient light, which, without respondent's fault, suddenly and unexpectedly went out, then respondent was not negligent. Again, in another instruction, the court, after observing that if appellant, in the exercise of ordinary care, received his injuries on account of the darkened condition of the premises, concluded as follows:

"Unless a light was being provided by the city, and that the same had suddenly and unexpectedly gone out, then I charge you that the defendant would be guilty of negligence, and your verdict must be for the plaintiff. If, however, you find from the evidence that the platform was sufficiently lighted to make it safe for the reception of passengers when the train arrived, or that the defendant exercised due care and diligence to provide a light, under the circumstances, you will find for the defendant."

Thus it is left again to be inferred that, if the city's light had suddenly and unexpectedly gone out, the respondent might for that reason not be negligent. It is also left to be inferred from the last words of the instruction that the exercise of care and diligence on respondent's part to provide a light, "under the circumstances," may have been sufficient, if it relied upon the circumstance that the city was in the habit of maintaining a light there. Again, in still another instruction the court said that if the train stopped at a platform properly lighted, "or

for the lighting of which defendant had done all it could, and all that a person of common prudence would have done, under the circumstances," etc. It is not contended that respondent maintained any light of its own upon the premises or in the locality, but it appears that an electric light company was at the time lighting the city, and that the apparatus for an arc light was located about one hundred and sixty feet distant from the center of the depot. There is conflict in the evidence as to whether the light was burning when the train arrived on the night in question. There being no evidence that respondent had any light of its own, the words last quoted from the court's instructions would seem to leave the jury to find that if the respondent had made an effort to have the city, through its lighting agent, furnish a light, then, although there may have been no light, yet this was all that common prudence required, and that under such circumstances there was no negligence. We are unable to reconcile the above instructions upon any other theory of the law than that it was the view of the learned trial court that when respondent had made diligent effort to have the city furnish a light, and the city had undertaken to do so, the respondent in good faith depending thereon, no negligence can be imputed to it if no light was there under such circumstances. This view is in conflict with the holding of this court in *Herrman v. Great Northern Ry. Co.*, 27 Wash. 472 (68 Pac. 82), decided since the trial of this case below. It was there held that the duty devolves upon a railroad company primarily to maintain safe depot premises for the accommodation of its patrons, and that, if it delegates that duty to another, his negligence becomes the negligence of the railroad company. In view of the doctrine announced in that case, we think the foregoing instructions may have misled the jury. While the court did

not directly state the law in conflict with the above case, yet the inference to that effect is so strong it seems impossible that the jury could have understood it otherwise. We are, therefore, impelled to hold that the giving of said instructions constituted an error.

It is also assigned that the court erred in giving the following as a portion of one of the instructions:

"A passenger who knows where the platform is, and who alights on the opposite side without any other reasons than his own convenience or inclination, is guilty of negligence, and cannot recover if he is injured in consequence."

This instruction seems clearly to state that, as a matter of law, it is negligence for a passenger to get off a train on the side opposite the depot platform, when he knows where the platform is, and if it is merely to suit his convenience. Such, we think, is not the rule; but it is a question to be left to the jury whether, under all the attending circumstances, it is negligence in the particular case. The effect of this instruction, under the facts of this case, is to practically determine the question of contributory negligence as a matter of law, and it is thus taken from the jury as a fact for their consideration. The evidence shows that appellant did alight from the train on the side opposite the platform, and in his own testimony he says the passengers "were scrambling out on both sides." We think it was for the jury to say whether it was negligence for him to alight where he did, and, further, that they may have been misled by the instruction to the belief that the mere fact of his leaving the train as he did, if it was only for his convenience, was negligence in law, and that nothing further was left for them to consider. There is variance in the decisions of the courts upon the point here involved. The following cases hold

that it is not negligence *per se* for one to get off a train
on the side opposite the platform, but that such fact is
a question for the jury, in connection with other physical
conditions proven. *McQuilken v. Central Pacific R. R.
Co.*, 64 Cal. 463 (2 Pac. 46); *Chicago, M. & St. P. Ry
Co. v. Lowell*, 151 U. S. 209 (14 Sup. Ct. 281); *Robos-
telli v. New York, N. H. & H. R. R. Co.*, 33 Fed. 796;
*Plopper v. New York Central, etc., R. R. Co.*, 13 Hun,
625.

The doctrine of the above cases is in harmony with the
uniform holding of this court that contributory negligence
is generally a question for the jury. For these reasons,
we believe the giving of the instruction was error.

We do not deem it necessary to discuss other alleged er-
rors. Respondent contends that this court should not ap-
proach the consideration of error upon the instructions,
but should hold that the motion for non-suit should have
been granted under appellant's testimony. The follow-
ing appears in appellant's testimony:

"Q. How old are you?

A. I am ninety-one. I have been in my ninety-second
since the first day of July.

.    .    .    .    .    .    .    .    .    .    .    .    .

Q. When the train stopped at Walla Walla, state to
the court and jury what you did in the way of getting
off?

A. When I got in there, there was some considerable
confusion to get out of the train. They were scrambling
out on both sides, so there was no show to get out from that
side without standing there. I said I wanted to get out be-
cause I was old. I wanted to go so I could walk quick
with the crowd, for I could not see so well as the rest,
I was old and too crippled to come behind. The con-
ductor—I suppose it was the conductor—he said: 'Walla
Walla,' that is why I took him to be the conductor. He
said: 'There is a place you can get out without fear.' I

looked at it and went down. He helped me down. When I got down, I said: 'There is no platform here.' 'No,' he said, 'you are on the other side of the platform.' 'Well,' said I, 'I want to get on the platform. I can't see the ground. The ground looks dark to me.' It was very dark. He said, 'You will have to go way around and cross there,' or wait until the train went off. He showed me which way to go around the car. I started down that way, and went down, as I supposed—down along,—when I got down opposite that thing that hauls coal. That was the car that was there, I could not see any thing. It was very dark. I stood there for a minute or two. I don't know how long. The first I knowed, the train was gone. Where it had gone, I don't know. I was afeared if I took many steps I would be run over by the train. I stood for quite a bit. Then I stepped a few steps. How many I don't know. I cannot exactly tell. But I got down below the platform, where I supposed it was. Then I turned around to go back, and I struck some kind of a platform. I crawled upon it. I hollered for help three times as hard as I could holler. I got upon the platform and I stepped around carefully, feeling with my cane, and all at once I slipped off, and went onto my knee and elbow, and then I hollered 'Murder!' as hard as I could holler."

The court properly denied a non-suit upon the above testimony, but, for reasons above given, the judgment is reversed and the cause remanded, with instructions to grant a new trial.

REAVIS, C. J., and FULLERTON, MOUNT, WHITE, ANDERS and DUNBAR, JJ., concur.