## BEN B. COTANT, Appellee, v. BOONE SUBURBAN RAILWAY COMPANY, Appellant.

**Railways:** PERSONAL INJURY: EXIT FROM TERMINAL. A railway company is liable to one of its passengers for injuries received from a defective stile, erected by a third person, over a fence separating the company's right-of-way from the land of another, when such stile is used by its passengers with the knowledge of the company, though the same was partly upon land on which it had no right to enter.

**Damages:** INSTRUCTIONS. In a personal injury action, an instruction relating to damages for future disability is held to have support in the evidence, and is approved.

**Railway terminal:** EXIT. Where there was evidence tending to show another exit for passengers from a railway terminal, than that used by plaintiff, it was for the jury to say whether or not it was reasonably safe and accessible.

**Terminal exits:** NEGLIGENCE. It is the duty of a railway company to provide a reasonably safe exit from its stations or terminals, and it is liable for an injury resulting from a defective stile used by its passengers as an exit, although constructed by another.

*Appeal from Boone District Court.*—HON. W. S. KENYON, Judge.

WEDNESDAY, APRIL 6, 1904.

ACTION at law to recover damages for personal injuries received by plaintiff, due, as is alleged, to defendant's negligence in maintaining an exit from one of its terminals. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*W. W. Goodykoontz* and *Dowell & Parrish,* for appellant.

*C. T. Cotant* and *Ganoe & Hollingsworth,* for appellee.

DEEMER, C. J.— Defendant owns and operates an electric railway from the city of Boone to the Des Moines river, near what is known as the "High Bridge" of the Chicago & Northwestern Railway, and on the 4th day of July, 1901, was carrying passengers over the said line for hire. The west or river end of this railway ran for some distance parallel to, and immediately north of, the right of way of the Chicago & Northwestern Railroad Company, and the rights of way of the two companies were separated by a wire fence. Just prior to the 4th day of July, 1901, one Spraker, who owned some land south of the steam railway right of way, which he used as pleasure ground, constructed a stile over this wire fence, which was made by placing two ladders, each eight or ten feet in length, and fourteen or sixteen inches in width, in such a position as that two ends met over and above the fence, while the other ends were set in the earth on either side thereof. Boards running parallel with the sides of the ladders were nailed thereon, and strips or cleats at short intervals were fastened to these boards. There were no railings or handrails, and no lateral supports. Plaintiff took one of defendant's trains in the city of Boone, rode out to the western terminal at or near the Des Moines river, alighted from the car, and, seeing this stile, which was near where the train stopped, attempted to pass over it, and, as he started to descend from the top, caught his foot in such a way as that he was thrown to the ground, and received the injuries of which he complains. He said on the witness stand that as he took the second step down, and placed the weight on his foot, something broke or turned with him, causing him to lose his balance and to fall to the ground; that his foot was caught and held, so that his head and shoulders struck the ground. The alleged grounds of negligence are that:

The said stile was without railing or means of lateral support, and that the defendant, its agents or servants, so carelessly and negligently constructed, appropriated, main-

tained, and used said unsafe and dangerous ladder and stile, and so negligently and carelessly failed, refused, and neg-. lected to assist plaintiff at any time or 'in any manner in getting over said ladders or stile or barb-wire fence, in departing from the defendant's said grounds, and so failed, refused, and neglected to provide safe means of egress and ingress from or to said grounds, as to cause each and all of the damages set out in the petition; that said stile or ladder was so defectively constructed of light and defective timber as to break and give way, and thus throw plaintiff to the ground and break his leg, causing the injury complained of.

.Defendant denied any negligence on its part, and pleaded contributory negligence on the part of the plaintiff. Many points are relied upon for a reversal, the more important of which we shall consider in the order presented by appellant's counsel in their brief.

The first proposition made by them is that as defendant did not erect the stile, had not assumed control thereof, and had no right to enter upon the land of the steam railway, either to inspect or to repair it, it owned plaintiff no duty with respect thereto, and cannot be charged with negligence either in the construction or maintenance of this device. The trial court gave the following, among other instructions:

" You are instructed that, after completing its road, defendant was under no obligations to build or erect a stile or stairs over the fence from the right of way leading over and into the right of way of the Chicago & Northwestern Railway; but if you find from the evidence that said stile in question was constructed partly on defendant's grounds and partly on the grounds of the Chicago & Northwestern Railway Company, and that the same was used by the passengers from defendant's cars as the usual means of egress from said grounds, and such fact was known to defendant, and defendant permitted the same, and there was no other reasonable or safe way of egress from said grounds, then the fact that said stile was partially upon the grounds of the Chicago & Northwestern Railway Company would not relieve defendant of the obligation to exercise ordinary care in keeping said stile in a reasonably safe condition, if it allowed the same

to remain and be used as the only reasonable means of egress from its grounds."

From the statement already made, it will be observed that the accident occurred on that part of the stile which was over and upon the right of way of the Chicago & Northwestern Railroad, and it is contended that defendant's responsibility ceased when the passenger passed upon the grounds of another carrier; that, at most, it was under no other duty to the plaintiff than to warn him of danger of which it had notice or knowledge, and that its liability is no greater than if the stile had been erected jointly by the steam railway company and the defendant. The defendant did not erect the stile, and there is no evidence that the Chicago & Northwestern Railroad Company had anything to do with it.   Little need be said in support of the proposition that this stile was a dangerous contrivance. The jury so found, and we have no doubt of the correctness of its finding.   But defendant strenuously insists that, as it had no right to enter upon the grounds of the other company to repair the device, it cannot be held liable for any injury that may have resulted from the use thereof.   Ordinarily this proposition is true, but it must be remembered that this contrivance, while partly on or over the land of the Chicago & Northwestern Railroad Company, was a single, complete device, and formed a continuous passageway over the fence; and if defendant invited its passengers to use it, either expressly or by implication, it was bound to at least ordinary care in seeing that it was fit for the purpose intended.   That it had no right to go upon the grounds of the Chicago & Northwestern Railroad Company to make inspection or repairs is not controlling.   Its passengers were not bound to ascertain at their peril what part of this stile was on the premises owned by another company, and what right defendant had to use it.   Defendant undoubtedly had the right to make arrangements with this other company for the construction of a stile, and for permission to its passengers, to

*1. Personal injury: exit from terminal.*

cross its right of way; and, having invited the traveling public to use the device, it will not be permitted to say that it had no right to erect part of the contrivance upon grounds of another company. It will not do to say that the traveling public must inquire in such cases as to the right the carrier had to pass upon the grounds of another company to make repairs. This contrivance was used by defendant's passengers alone. It was not built to accommodate the steam railway or its passengers. The use made of the railway right of way was permissive only. That company had no interest in the device, did not profit therefrom in any way, and was not using it for the benefit of its patrons. It did not owe the plaintiff or the defendant company any duty whatever with reference to this stile, and the plaintiff was not going upon its grounds for the purpose of taking its trains, or for any other purpose than simply to cross them. In so doing, he was nothing more than a licensee, and the steam railway company was under no obligation to look after his safety in coming upon its premises. The use made of the stile was for the joint benefit of the defendant company and the owner of the pleasure grounds. The jury was justified in finding that the defendant company knew that it was being used by its passengers, and that it was in a dangerous condition. It was also justified in finding, on account of its position and the manner in which defendant stopped its trains and operated its road, that there was an implied invitation to its passengers to use the device in going to the High Bridge and to the picnic grounds of Spraker, the man who constructed the stile. Had the contrivance been constructed by the defendant and the Chicago & Northwestern Railroad Company jointly for the use of the passengers of either line, both would undoubtedly have been liable for an injury received by a passenger.

The rule seems to be " that the depot and connected grounds, visited by coming and going passengers, should be fitted up with a careful regard for their comfort and safety.

The approaches, the tracks around the platform for entering and leaving the cars, the passages of the cars, every spot likely to be visited by passengers seeking the depot, waiting at it for its trains or departing, should be made safe, and kept so." Bishop, Noncontract Law, section 1086. See, also, *Lucas v. Pennsylvania Co.* 120 Ind. Sup. 205 (21 N. E. Rep. 972, 16 Am. St. Rep. 323), and cases cited. Here there was no liability on the part of the steam railway company, but the situation was such as to make it natural for a person alighting from defendant's train as plaintiff did, intending to go to the bridge or to the pleasure grounds, to use the stile in passing over the fence. Defendant was bound to know that persons alighting from its trains would likely use this device in passing to their destination, and it was its duty to use at least ordinary care in seeing that it was properly constructed and in good repair. The following cases lend support to our conclusions on this point: *Cross v. Lake Shore Co.,* 69 Mich. 363 (37 N. W. Rep. 361, 13 Am. St. Rep. 399); *Collins v. Toledo Co.,* 80 Mich. 390 (45 N. W. Rep. 178); *East Tennessee Co. v. Watson,* 94 Ala. 634 (10 South Rep. 228); *Delaware Co. v. Trautwein,* 52 N. J. 169 (19 Atl. Rep. 178, 7 L. R. A. 435, 19 Am. St. Rep. 442).

II. The defendant asked an instruction to the effect that, if the jury found the injury was due to a defective step or board in the stile, it would not be liable, unless it knew, or in the exercise of ordinary care should have known, of this defective condition. This thought was embodied in one of the instructions given by the trial court, and defendant has no cause of complaint.

III. Instruction 10, which reads as follows, is complained of:

" If you find from the evidence that the stile in question was constructed partly upon the ground of defendant company, and that the same was ordinarily and generally used by those who were passengers on defendant company's cars as a means of egress from said grounds, where the rail-

way of defendant terminated, and that there was no other reasonable means of egress from said grounds, and that said defendant company knew that said stile was so used by passengers upon its cars in leaving said grounds, and that it permitted them to do so; and you further find that said stile, by reason of its narrowness, or by reason of the fact that there was no railing thereon, or by reason of the fact that said stile was constructed of light and defective lumber, if such you find the fact to be, was not such means of egress from said grounds as an ordinary person would provide under similar circumstances — you will be justified in finding the defendant guilty of negligence, as charged. If, however, you find that the said stile was such as an ordinary person would employ under similar circumstances as a means of egress from said grounds, then there would be no negligence upon the part of defendant."

The criticism is that there was no evidence upon which to base it. Suffice it to say that we find in the record ample testimony to justify the instruction.

IV.    Instruction 19, relating to the measure of damages, is also challenged. It reads as follows:

" If you find him entitled to recover, he should be allowed a fair and reasonable compensation for his injuries. In estimating his damage, no precise rule can be given for the amount to be allowed, as they are not in their nature susceptible of exact money valuation. You are to use your own sense and judgment, and be guided by the evidence, in allowing him such sum as will reasonably compensate him. In making up this amount, you should award, as may appear from the evidence, the reasonable value of the time lost because of the injury, the amount he has paid for medical attendance and nursing, and fair compensation for the bodily pain and suffering caused by the said injury; and if you further find that plaintiff's injuries are permanent, and will, to some extent, disable him in the future, and cause him pain and suffering hereafter, you should also allow him such further sum as, paid now in advance, will reasonably compensate him for such future disability, pain, and suffering as the evidence shows it is reasonably probable will result to him in the future from such injuries."

2. Damages: instructions.

The first point made with reference to this is that there is no testimony on which to base an allowance for future disability.   The evidence clearly shows that plaintiff was suffering from his injuries at the time of trial, and the experts testified that his injury would probably be permanent. Plaintiff testified that he was earning $50 per month before the injury, and had not been able to earn more than $10 since.   This was sufficient to take the case to the jury. *Smith v. Sioux City,* 119 Iowa 50; *Winter v. R. R.,* 80 Iowa 443; *Ashley v. Sioux City* (Iowa), 93 N. W. Rep. 303.   Next it is argued that the instruction runs counter to the rules announced in *Fry v. R. R.,* 45 Iowa 416, and *Laird v. R. R.,* 100 Iowa 336.   A reading of these cases will sufficiently demonstrate the incorrectness of this proposition.   Abstractly considered, the instruction has support in *Baily v. City,* 108 Iowa 20; *Miller v. Boone Co.,* 95 Iowa 5; *Smith v. Sioux City, supra.*

V.   Lastly it is argued that the verdict is contrary to the instructions.   The principal contention here is that there was another means of egress from the defendant's grounds, 3. RAILWAY whereby plaintiff could have reached his desti- TERMINAL: nation with safety.   There was testimony to exit. the effect that there was an opening in a barbed-wire fence forty rods away, but it was not a place which afforded a reasonable means of egress from the defendant's terminal. Another opening in the fence, four hundred or five hundred feet away, was spoken of by one witness, but it was not in sight, and the witness said that it may have been closed on the day of the accident.   It was clearly a question for the jury to say whether or not there was another reasonably safe and accessible place of exit from the grounds where the railway terminated, and as to whether or not plaintiff was negligent in not taking it.

In conclusion, we may say that the case was submitted to the jury on two theories: One, that the stile, by reason of its narrowness, or for want of railings, or because it was

constructed of light or defective materials, was not such
4. TERMINAL    means of egress as an ordinarily prudent per-
EXITS:
negligence.    son would provide, in which event defendant
might be found guilty of negligence; and the other, that the
injury was due to a defective board in said stile, in which
event defendant would not be guilty of negligence, unless it
knew, or in the exercise of reasonable care should have known,
of its defective condition. The latter theory was bottomed
on the thought that the stile itself was not dangerous, save as
it had a defective board. What we have said in the first
division of this opinion has reference to this last contention.
On the other proposition, defendant was liable for the defec-
tive condition of the stile, although it was erected by a
stranger. Defendant had full knowledge of the construc-
tion of the stile, and impliedly invited its passengers to use
it. Under such circumstances, its liability is the same as if
it had itself set up and maintained the device. See cases
hitherto cited, and *McDonald v. R. R.,* 26 Iowa 124; *Beard
v. R. R.,* 48 Vt. 101; *Gilmore v. R. R. Co.,* 154 Pa. 375 (25
Atl. Rep. 774); *Watson v. Land Co.,* 92 Ala. 320 (8 South
Rep. 770). This rule is bottomed on the proposition that
the duty of a carrier of passengers does not end when the
passenger has alighted from its cars. It must also provide
reasonably safe means of access to and from its stations or
terminals for the use of its passengers, and passengers
have a right to assume that the means of egress provided
are reasonably safe. This duty it cannot delegate to another
so as to relieve itself from responsibility. See cases hither-
to cited. Defendant's contention that it is not liable because
the stile was erected by a stranger is unsound in principle,
and not sustained by authority. When it invited its pas-
sengers to use this stile, it, in effect, represented that it was
reasonably safe for the purposes intended; and, when injury
occurred by reason of its unsafe or faulty construction, it
should not be allowed to shield itself behind another, and to
say that it did not know of its defective construction. *Gulf*

*F. R. Co. v. Glenk,* 9 Tex. Civ. App. 599 (30 S. W. Rep. 278), and cases cited.

The instructions were even more favorable to the defendant than it was entitled to. We are not to be understood as approving all of them. Suffice it to say that defendant was in no manner prejudiced either by those given, or by the refusal of the court to give those asked by it. Our observations in the second paragraph of this opinion must be construed with reference to these suggestions.

There is no prejudicial error in the record, and the judgment must be, and it is, *affirmed.*

BISHOP, J., taking no part.