WILLIAM L. BUCHNER, PLAINTIFF-APPELLANT, v. ERIE RAILROAD COMPANY, A CORPORATION OF NEW YORK, DEFENDANT-RESPONDENT, AND BOROUGH OF RIDGE-FIELD, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT.

Argued January 3, 1955—Decided January 24, 1955.

284

*Mr. Richard F. Green* argued the cause for appellant.

*Mr. G. Addison Hobart* argued the cause for respondent (*Messrs. Minard, Cooper Gaffey & Webb,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J.   In the evening of December 5, 1950 the plaintiff William L. Buchner boarded a train operated by the defendant Erie Railroad Company at Jersey City, destined for Ridgefield, New Jersey.   The train arrived at the defendant's station in Ridgefield at 5 :31 P. M., and plaintiff debarked, finding the station and the adjacent area "pitch

black." The absence of illumination was attributable to a severe storm about ten days earlier which had damaged and rendered useless the public utility power lines.

The general direction of the railroad tracks lay north-south, and upon leaving the station platform by means of an entrance way provided for that purpose, plaintiff walked in a northeasterly direction across an asphalt-paved area immediately adjacent to the station platfrom, his objective being to reach the sidewalk which bounded the paved area. According to the testimony, the route taken by the plaintiff on this occasion was customarily used by defendant's passengers as a means of egress from the station. The paved area was owned by the defendant but was leased to the Borough of Ridgefield and was used as a parking lot for the patrons of the railroad and the general public.

As plaintiff neared the sidewalk, he tripped and fell over a curbstone which projected into the paved area. The curbstone, as subsequently proven, lay exactly 1.8 feet beyond the property line of the defendant but between that property line and the sidewalk. The asphalt paving which covered the parking lot extended across the railroad property to the concrete sidewalk, and the property line was not marked or indicated on the pavement. The railroad did not own and did not construct or maintain the curb, the sidewalk or the street lights which illuminated the station area.

For the physical injuries sustained as a result of his fall, plaintiff brought an action against both the municipality and the railroad. At the trial, following the presentation of plaintiff's proofs which established the facts related above, the court granted motions for judgment on behalf of each defendant. The plaintiff appealed only from the judgment entered in favor of the railroad, and the Appellate Division affirmed. The cause comes to us by way of certification. *Buchner v. Erie R. R. Co.*, 16 *N. J.* 196 (1954).

■ The basic question with which we are here concerned is the duty of the proprietor of premises to which the public is invited. The proprietor owes a duty to exercise reasonable

care to see that those who enter the premises as a result of the invitation have a reasonably safe place to do that which is within the scope of the invitation. That duty is satisfied when reasonable care has been used to maintain the premises in question in a condition reasonably safe for the invitee's proper use. *Bohn v. Hudson & Manhattan R. R. Co.*, 16 *N. J.* 180, 181 (1954).

In the case of a common carrier, the duty imposed requires not only that the transportation vehicle be kept safe, but that a safe means of ingress and egress be maintained for the use of the passengers. That duty was succintly defined in *Delaware, L. & W. R. R. Co. v. Trautwein*, 52 *N. J. L.* 169, 175 (*E. & A.* 1889), as follows:

"The duty of a railroad company, as a carrier of passengers, does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe."

The Appellate Division, while recognizing the obligation of a common carrier to provide a safe means of ingress and egress for its passengers, held in the case at hand that the defendant's duty terminated at the boundary line of its property since the carrier's control over the premises ceased at that point.

Ordinarily, it may be true that the private landowner's accountability for the care he owes to his invitees begins and ends with the boundary lines of his property. However, a common carrier does not enjoy the status of a private landowner in this respect, nor his limited responsibilities. Its liability to the public it invites and serves is not necessarily defined by the physical boundary lines of its property, nor by its actual control of the premises which are held out to the public for ingress and egress. The absence of ownership or control, we have held on numerous prior occasions, is not determinative of the carrier's duty to its passengers.

In the *Trautwein* case, *supra,* the passenger fell over an

obstruction on the carrier's property while trying to reach a stairway constructed and maintained by private persons as a means of egress from the railroad station. However, in *Yetter v. Gloucester Ferry Co.*, 76 *N. J. L.* 249 (*Sup. Ct.* 1908), the defendant ferry boat company did not own or control the pier at which its passengers were discharged and which was used by them as a means of egress from the ferry boat to the shore. As here, the carrier contended that it therefore owed no duty to one of its passengers who was injured while walking on the pier after having debarked from its ferry boat. Chief Justice Gummere disposed of this contention thusly (at *page 251*):

"The ownership of the pier, however, is immaterial, so far as the defendant's liability to the plaintiff is concerned. It was the landing place supplied by it to the plaintiff, and it owed to her the duty of using care to see that this landing place was safe for her use."

In *Fortein v. Delaware, L. & W. R. R. Co.*, 90 *N. J. L.* 137 (*E. & A.* 1917), substantially the same contention was urged upon the Court of Errors and Appeals. In that case a ferry boat passenger was injured when she stepped into a hole in the asphalt pavement which was not part of the premises owned by the carrier but which was used by its passengers as a means of egress. The court concluded (at *pages 139–140*):

"* * * nevertheless, on the facts stated, it cannot be said, as matter of law, that there was no liability on the part of appellant. It appears from the evidence that the place where the accident happened was a portion of the ferry premises as actually used by the appellant, and with respect to which, therefore, it was the duty of the appellant to exercise reasonable care to make those premises safe for the use of its passengers, of whom the plaintiff Desire Fortein was one.

The decisions are quite uniform to the effect that such a situation as above described created a liability for accidents happening by the ostensible owner's negligence", citing *Delaware, L. & W. R. R. Co. v. Trautwein, supra,* and *Yetter v. Gloucester Ferry Co., supra.*

More recently, this court had occasion to pass upon the question in *Horelick v. Pennsylvania R. Co.*, 13 *N. J.* 349 (1953). There the passenger was injured when she slipped

and fell on ice present on a station platform which was neither owned nor controlled by the defendant railroad but which was used by its passengers as a means of egress. In the thoroughly considered opinion of Justice Jacobs, the *Trautwein, Yetter* and *Fortein* decisions are noted and commented upon, and he determined that the obligation of the carrier to its passengers as therein formulated is not only firmly established by our own decisions, but by common-law principles as well, citing (at *page* 354) 2 *Hutchinson, Carriers* (3*d ed.* 1906), § 928; 10 *Am. Jur., Carriers,* § 1296, *p.* 193.

The rule as enunciated and embraced by us is recognized and adhered to in other jurisdictions. *Cotant v. Boone Suburban R. R. Co.,* 125 *Iowa* 46, 99 *N. W.* 115, 69 *L. R. A.* 982 (*Sup. Ct.* 1904); *Schlessinger v. Manhattan R. Co.,* 49 *Misc.* 504, 98 *N. Y. S.* 840 (*App. Term* 1906); *Skottowe v. Oregon S. L. & U. N. Ry. Co.,* 22 *Ore.* 430, 30 *P.* 222, 16 *L. R. A.* 593 (*Sup. Ct.* 1892), affirmed 162 *U. S.* 490, 16 *S. Ct.* 869, 40 *L. Ed.* 1948 (1896); *Beard v. Conn. & Passumpsic Rivers R. R. Co.,* 48 *Vt.* 101 (*Sup. Ct.* 1875); and many others.

Seemingly in conflict but reconcilable on close analysis is *Garrett v. Atlantic City & S. R. Co.,* 79 *N. J. L.* 127 (*Sup. Ct.* 1909), cited by the defendant and relied on by the Appellate Division. There the passenger was not pursuing any course held out to him by the railroad and was classified as "substantially a trespasser on the tracks." Moreover, the accident occurred after he had reached the public highway, and the court held that the relationship of passenger and carrier had therefore terminated prior to the accident.

The factual situation in the instant case is noticeably different. Here the obstruction causing the plaintiff's fall, although off the railroad property, was not in the highway or on the sidewalk but was adjacent to the defendant's property and directly in the route normally pursued and used by the passengers, presumably with the full knowledge of the defendant.

Reasonable care should not be arbitrarily and automatically terminated and discontinued at the property line of the railroad when the means of egress generally pursued by the passengers covers ground in close proximity to the railroad's and constituted the recognized way of egress between the railroad station and the sidewalk, acquiesced in and consented to by the railroad over a period of time.

Here the question arises whether upon the evidence produced the jury could have found negligence on the part of the defendant Erie Railroad Company in fulfilling the duty which it owed to Mr. Buchner. We think it could.

In reaching this conclusion we rely upon the rule which we have repeatedly proclaimed that in passing on a motion for judgment, the evidence will not be weighed but all the proofs which support the claim of the party against whom the motion is made must be accepted as true, together with all the legitimate inferences which may be drawn therefrom. When fair-minded men might honestly differ as to the conclusion to be drawn from the proofs, the question at issue should be submitted to the jury. *Schwartz v. Rothman,* 1 *N. J.* 206, 209 (1948); *Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc.,* 3 *N. J.* 149, 154 (1949).

On the evidence adduced at the trial the jury would have been justified in finding that the curbstone over which the plaintiff tripped and fell rendered the route followed by the plaintiff in leaving the station unsafe and that the defendant had thus violated its duty to the plaintiff to provide a safe means of egress, as in *Yetter v. Gloucester Ferry Co., supra,* or in holding out to the plaintiff that the egress used by him was safe for such purpose, as in *Delaware, L. & W. R. R. Co. v. Trautwein, supra.*

Another factor must be considered. The jury might have found negligence on the part of the defendant railroad in failing properly to illuminate the station and the surrounding area which was used by its passengers in reaching the sidewalk. An inference can properly be drawn from the testimony and the exhibits introduced in evidence that the

railroad station normally and customarily was lighted to insure the safety of the passengers in their use of it and the surrounding premises, which, of course, the carrier was obliged to do. *Texas & Pac. Ry. Co. v. Stewart*, 228 *U. S.* 357, 362, 33 *S. Ct.* 548, 57 *L. Ed.* 875 (1913); *Young v. Baldwin*, 84 *F.* 2d 841 (8 *Cir.*, 1936); *O'Brien v. Rutland R. Co.*, 243 *App. Div.* 833, 278 *N. Y. S.* 8 (*App. Div.* 1935); *McCarthy v. Boston R. B. & L. R. Co.*, 262 *Mass.* 56, 159 *N. E.* 507 (*Sup. Jud. Ct.* 1928); *Payne v. Davis*, 298 *Mo.* 645, 252 *S. W.* 57, 61 (*Sup. Ct.* 1923); *Jackson v. Hines*, 137 *Md.* 621, 113 *A.* 129 (*Ct. App.* 1921); *Powell v. Philadelphia & R. R. Co.*, 220 *Pa.* 638, 70 *A.* 268 (*Sup. Ct.* 1908).

Exhibit P-2, a photograph, shows a municipal street light which normally no doubt aided vision in the area where the accident occurred. While it is true that the lights were out of use as a result of a storm which had occurred ten days before the accident, nevertheless we think a question, specifically raised by the complaint and the pretrial order, was properly before the jury as to whether the defendant railroad was obligated to supply reasonable illumination by installing or providing auxiliary lights to compensate for the failure of the municipal lighting system upon which it otherwise relied. *Owen v. Washington & C. R. Co.*, 29 *Wash.* 207, 69 *P.* 757 (*Sup. Ct.* 1902).

The court, we must determine, erred in granting the defendant's motion for judgment. The judgment below is reversed and the cause remanded for a new trial.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, JACOBS and BRENNAN—5.

*For affirmance*—Justices OLIPHANT and BURLING—2.