## SARAH COLLINS v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY.

*Negligence—Railroad companies—Station—Means of ingress and egress—Evidence.*

1. It is the duty of a railway company to provide a reasonably safe and convenient means of reaching its station, and if, with full knowledge of the facts, it permits an unsafe and dangerous means to be provided and used, it is as much liable for an injury arising therefrom as if it had itself set up and maintained the dangerous way; citing *Cross v. Railway Co.*, 69 Mich. 363.

   So *held*, where at a country station a platform used by passengers in entering and leaving the cars was so high as not to be conveniently reached, particularly by women, without a step, which the company failed to provide. A well-beaten path led from the store of the station agent to this platform, which path was commonly used by the public, and some one had provided a plank reaching from the platform to the path, which was commonly used in reaching the platform, and had been since the depot was built, and by the falling of which plank the plaintiff was injured.

2. In such a case evidence is admissible to show how long the plank had been in use, and the extent of its use by the public.

Error to Shiawassee.   (Newton, J.)   Argued April 17, 1890.   Decided May 2, 1890.

Negligence case.   Defendant brings error.   Affirmed. The facts are stated in the opinion.

*Lyon & Hackleman,* for appellant, contended.

1. A railroad company may select and adhere to such arrange- ments of its depots and platforms as it sees fit, if they are safe and commodious.  Passengers cannot be supposed to be ignorant of the necessity and use of platforms, and when one is in plain sight, which they must know was made for their use, they cannot complain that they are not accommodated; citing *Railroad Co. v. Coleman,* 28 Mich. 440; *Bedell v. Berkey,* 76 Id. 435; *Railroad Co. v. Zebe,* 37 Penn. St. 420; *Railway; Co. v. Scates,* 90 Ill. 586.

2. In this case the fact was undisputed that a platform was pro-- vided by the company from the highway to the depot, of which no complaint could be made, except that the step was, fifteen and one-half inches high, and this defect is not com- plained of in the declaration.  It was not alleged or proved that the plaintiff, or any one, ever suffered, or ever took another and dangerous way, on account of it, and under the facts as proved, and law as announced, the plaintiff was guilty of carelessness in going the way she did.

3. While evidence of the customary way of doing a thing may sometimes be shown, custom cannot justify a negligent act, nor can proof of a custom be adduced to show negligence. Such evidence would be in effect excusing defendant's negli- gence, by showing a custom of others to be equally negligent; citing *Railroad Co. v. Coleman,* 28 Mich. 440; *Railway Co. v. Evansich,* 61 Tex. 3; *Railroad v. DeBray,* 71 Ga. 406; *Mason v. Railway Co.,* 27 Kan. 83.

*Watson & Chapman,* for plaintiff, contended for the doctrine stated in the opinion.

CAHILL, J.   This action was brought to recover dam- ages on account of an injury to plaintiff's foot occasioned by the falling of a plank on which she was walking in ascending the platform at defendant's depot at Carland.

The plaintiff recovered $1,000, and the defendant brings error.

Carland is a station in the country at a crossing of an ordinary country road, without sidewalks. There are two stores on the opposite side of the highway, and a little south. At the time of the accident, Mr. Shannon, one of the store-keepers, acted as agent. The station and platform had been built for about three years prior to the accident, which occurred on August 21, 1888. The station-house was surrounded by a platform elevated in most places about two feet from the ground. From the platform which surrounded the depot there extended west, along the railway track, another platform, about 40 feet long and 12 feet wide, which was used by passengers entering and leaving the cars. At the west end of this platform, it was not so high above the ground; and at one point, at least, near the north-west corner, the ground was only about 15½ to 16 inches lower than the top of the platform. The railroad company had never provided any steps to this platform at any point, and persons having occasion to visit the station were required to step from the ground, a distance of 20 to 30 inches, varying with the level of the ground at different places, except that, if they entered it at the west end, they could reach it by stepping between 15 and 16 inches. The west end of the platform, however, was little used. Most of the people who went to the station would go there from the stores; and, in reaching the station from the stores, it was a shorter and more direct route to pass to the south of the platform extending west, and reach the platform at a point close to the station. There was a well-beaten path from the store of Mr. Shannon, the agent, running easterly towards the station to the edge of the platform which ran north and south close by the station. There was a plank about 12 inches wide and 14 feet long at the

point where the beaten path reached the platform, which was commonly used by persons ascending the platform at that point, and had been ever since the depot was built.

On the day of the accident the plaintiff, with her husband, had gone to the station to receive the body of a grand-daughter which was expected to arrive on a train. Several of their neighbors were gathered with them at the store of Mr. Shannon, awaiting the arrival of the train. When they started to go to the station the entire party followed the beaten path which led from the store to the point where the plank was. All of the party, consisting of four or five persons, ascended the plank in safety; but, while the plaintiff was on it, it slipped and fell to the ground, carrying the plaintiff with it, severely injuring her foot, and, as she claims, permanently disabling her.

The declaration charges that it was the duty of the defendant to keep the depot and grounds in good repair for the protection and safety of its patrons, and to provide suitable steps to reach the platform connected with the depot; and it is alleged that the defendant negligently failed to build, erect, or maintain any approaches to said platform and depot, whereby the same became and was very dangerous to those coming upon defendant's grounds on business with defendant.

"And said plaintiff avers that the only means provided for her to reach said platform was by means of a plank laid upon said platform, one end resting thereon, and the other end resting on the ground, which said defendant had provided for and allowed its patrons to use in getting upon its said platform, and into its said depot; that said plank had been so used by the patrons of said defendant for a long space of time prior to said 21st day of August, 1888, with the knowledge and consent of said defendant; that said defendant carelessly and negligently left said plank, and permitted and allowed it to be used by its patrons, and those who came to its depot and platform

on business with said defendant, and carelessly and negligently failed to fasten the same securely to said platform, so that the same would not fall and injure those who were using it in course of business with said corporation, whereby it became and was very dangerous to those using the same to reach said depot and platform."

The case against the defendant, plainly stated, is this: It was its duty to provide a reasonably safe and convenient means whereby persons having business at the station could reach it. The platform about the station was so high as not to be conveniently reached, particularly by women, without a step. The defendant provided no step. As a result, some one else, no matter who, provided a way—a temporary expedient—for getting over the difficulty. This temporary expedient was adopted by the public. It grew into a common way. The station agent used it. Everybody used it. There was a well-beaten path leading to it. If a person approaching the station looked along the platform, for a step upon which to ascend it, and saw none, there was the plank, with the beaten path, inviting him. Although the platform at the west end was lower, it was not enough lower to attract attention to it as the place especially intended or designated for people to enter it. When the plaintiff attempted to use the plank on the day of the accident, she did so only after her companions had preceded her in safety. It may have appeared safe. The declaration alleges that its insecurity lay in the fact that it was not fastened. The plaintiff testified:

"Just as I got almost ready to step my foot on the platform, this plank slipped back and went down; and I went with it, of course."

The court charged the jury:

"3. If the defendant habitually received and let off their passengers at such place by way of a plank, they must be expected to use such care as the circumstances.

called for; and if they did not use such care they would be guilty of negligence; and, if the plaintiff was injured thereby without any fault or negligence on her part, or want of due care on her part, she would be entitled to recover."

"5. If the jury find that the company did not provide the plank in question for the purpose of its being used by people going to and from the depot, but it was procured and used for the purposes and in the way stated by Mr. Shannon, the agent, then the company is not liable for the use of it by the plaintiff in the manner she did, on account of which she got hurt, unless you find that the company knew that said plank had for a long and continuous time been used by people doing business with said company, for the purposes of ingress and egress to and from the passenger depot of said company."

We think the court was justified by the evidence in these instructions. The duty of the railroad company to provide a safe means of reaching the station is clear. If, with full knowledge of the facts, it permitted an unsafe and dangerous means to be provided and used, it is as much liable for an injury arising therefrom as if it had ¡tself set up and maintained the dangerous way. *Cross v. Railway Co.*, 69 Mich. 362 (37 N. W. Rep. 361); *Beard v. Railroad Co.*, 48 Vt. 101; *Railroad Co. v. Trautwein*, 19 Atl. Rep. 178; *Keefe v. Railroad Co.*, 142 Mass. 251.

Error is assigned upon the admission of evidence tending to show how long the plank had been in use, and how much it had been used by the public. We think such testimony was competent to show the extent to which the way had been used.

The judgment will be affirmed, with costs.

The other Justices concurred.