### WOODS v. WHITE STAR LINE.

NEGLIGENCE—PATHWAYS—CARRIERS.

A person injured in making use of a short cut along a path to defendant's steamboat dock, falling over an embankment near the path in the dark, cannot recover where the company provided a safe approach and did no act in recognition of or inviting the use made by the public of the shorter way, which also crossed the premises of another proprietor.

Error to St. Clair; Law, J. Submitted February 28, 1910. (Docket No. 80.) Decided March 19, 1910.

Case by Rosetta Woods against the White Star Line for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*P. H Phillips* (*Gray & Gray*, of counsel), for appellant.

*C. L. Benedict* (*Walsh & Walsh*, of counsel), for appellee.

HOOKER, J. The defendant purchased certain premises bordering on the St. Clair river at Port Huron for the purpose of providing a dock for its steamer. This dock was not the place of its general wharf business at Port Huron, and it is understood that boats stopped there only when signaled, or when they had passengers or freight to be delivered there; it being located in the outskirts of the city. An approach was constructed for teams and pedestrians across defendant's premises, starting at Military street and at the northwest corner of defendant's land, and extending a little east of south to the entrance to the dock. There was a bank along the river, several feet high, and this had to be cut and sloped to make the approach passable, and below the bank a fill was necessary to bring the roadway on a level with the dock; the material for said fill being drawn by teams through the cut. To enable the teams to get out, both when making the fill and when they should be driven to the dock, another cut in the bank was made just south of the cut made for the approach, and teams went down the north cut and up the south cut, or by being headed up the south cut could be backed down toward the river, thereby getting in position to go out through the north cut. Before the purchase of the land by the defendant, the land east of Military street—of which this was a portion—had been a common, and it had been driven over in various directions by teamsters drawing and dumping rubbish over the river bank, entering from the foot of Connor street, at which point the banks of the highway ditch were more or less broken down by the crossing of wagons. There is testimony in the record that there was a wagon track extending in a circuitous course from the foot of Connor street to the place where the cuts were made, and, among others, that defendant's employé who had charge of the dock sometimes came and went that way from and to the dock, and "had been used by wagons and rigs, which in the course of usage had naturally made a path."

On a night which the plaintiff described as very dark

she went with her husband by this route on their way to the dock, attempting to follow the wagon tracks or path, as some witnesses call it, from Connor street to the dock. We quote:

" This path started in, I should think, about the north side of Connor street, and it went crooked; it turned and twisted; it was a crooked path down to the dock. Mr. Woods and I crossed over and got on the path. As we took it we were on the path and went down. It was very, very dark, and we couldn't see just where we were going, but we took it for granted we were on the path. We went down a piece, and Mr. Woods stopped, and he says, ' I don't see the boat.' At that time I couldn't say how far we had gone; quite a little ways down. As he stopped, I didn't; I kept on. I thought: ' Now it is awful dark, I will walk on a little,' and I was walking, and I thought: ' Now I guess I am off the path; there is the path over there.' I saw a light streak on the side, and I thought the path was clay, and I must be off it, because it was so dark. I couldn't see where I was, and I thought: ' I will go over to the path,' and I said: ' This road turns along here somewheres; that must be the path '—and I walked right along and walked right over the bank. I mean by that an embankment, and I fell; it was right along the side of the road."

She had been over this route in daylight once before, but had not noticed the condition of the road particularly. The plaintiff's ankle was injured, and she sued for and recovered a judgment against the defendant, from which it has appealed.

The most important question in the case rests in the refusal of the trial judge to direct a verdict for the defendant. The judgment can be sustained only upon the theory that the acts of the defendant justified the inference that it intended the public to understand that it recognized this as an approach to the dock, provided or maintained by itself. The testimony is not in dispute. Two questions are presented:

(1) Did the defendant provide or recognize this as one of the regular approaches to its dock ?

(2) Was its conduct such as to justify the plaintiff in so understanding it, and did she so understand it ?

There is no testimony in the record that tends to show that the defendant did any act in making or providing a roadway to Connor street.  The bare fact that a wagon or wagons had been driven from Connor street to the bank opposite the location of the dock was no such evidence, for it is plainly proven that this was nothing more than the acts of private persons in drawing refuse.  The south cut was made for the purpose already stated; to be used in connection with the only approach that the defendant made.  Not only did the defendant abstain from attempting to provide a second way, but to have made the approach contended for would have required it to trespass upon the private premises of an adjoining proprietor, over whose land this alleged path crosses, and which is cogent evidence that it did not intend this as an approach.

Counsel for the plaintiff cite three cases which are said to support her claim.  *Cross* v. *Railway Co.*, 69 Mich. 367 (37 N. W. 361, 13 Am. St. Rep. 399); *Collins* v. *Railway Co.*, 80 Mich. 390 (45 N. W. 178); *Lemon* v. *Railway Co.*, 136 Mich. 647 (100 N. W. 22).

In the *Cross Case* defendant's station grounds were crossed by a footpath running from the depot to the highway.  Most of the foot travel for many years had been over this path, and we said:

" The defendant cannot complain, because, under all the evidence, this hole was upon the station grounds of the company, and near enough to be dangerous to persons traveling the diagonal way at night.  The court could have safely told the jury that, if they found this way recognized and permitted by the railroad company, it was negligence in the defendant leaving it in the condition it was."

In *Collins* v. *Railway Co.*, *supra*, the road was held responsible for the safety of a plank, leading from the end of a beaten path to the platform alongside the track. This was the usual means of access to the depot, and had

been for a long time, and we held that the defendant was in duty bound to maintain it in a safe condition.

The case of *Lemon* v. *Railway Co.*, *supra*, was similar to the *Cross Case.*

*Cotant* v. *Railway Co.*, 125 Iowa, 46 (99 N. W. 115, 69 L. R. A. 982), was a case where a resort was adjacent to defendant's station grounds, except as it was separated therefrom by the right of way of another railway, and the proprietor of the resort erected a stile over the wire fence, which separated the two railroads, after which the patrons of the resort by their walking made a path to the depot via the stile, and it was used for a long time. The supreme court of Iowa held that a jury might find that this was a recognized way from the station which defendant should maintain, although the stile where plaintiff was hurt was partly upon the land of another company, where the defendant had no right to go to repair the stile. These cases sustain the very just rule that one inviting another upon his premises must use care to prevent injuries, by keeping the premises in a reasonably safe condition, and to keep in repair all ways for ingress and egress which it holds out or recognizes as such upon its own grounds to one who uses it in reliance upon a belief that the company has provided or so holds it out. We are of the opinion, however, that it is not the duty of a railroad corporation to improve and maintain as a safe way every cross or short cut which individuals may adopt to reach its depot.

The testimony shows that this alleged wagon track or path left Military avenue at the foot of Connor street; it being necessary to cross an open ditch to take it. At that point the entry was upon the premises of another proprietor, where, as on defendant's land, persons frequently went to view the river and the vessels passing to and fro. This had long been practiced. It was also used later as a short cut to the dock. Just how much of a footpath had been worn in the short interval that the dock was used before plaintiff was hurt is problematical. The testimony clearly indicates that whatever path there may have been

was made by persons choosing to take a direct route across the common rather than to travel the slightly greater distance via the approach provided.   We feel justified in saying that the testimony clearly shows that the path was obviously a crosscut, and that nobody could have considered it anything else, and there was no proof justifying any one in thinking that the defendant was inviting persons to travel that path.   This plaintiff testified that she went that way because it was shorter.   She preferred it rather than to walk down a highway to a point opposite the dock, where there was a safe approach.   She started in without being able to see the path, and on finding that she was out of the path pushed blindly on, and fell down the bank, about four feet from the path.   We need not say that this was necessarily negligent, for the reason that the case is already disposed of on the other point.   Neither do we say that it was not.   *Michigan Cent. R. Co.* v. *Coleman,* 28 Mich. 457.

The judgment is reversed, and a new trial ordered.

MONTGOMERY, C. J., and OSTRANDER, BLAIR, and STONE, JJ., concurred.