(Supreme Court, Appellate Division, Second Department. January 12, 1912.)

1. COURTS (§ 89*)—PRECEDENTS.

> Decisions as to the liability of a carrier for the approaches to its station are precedents only where the essential facts are similar.

> [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. § 89.*]

2. CARRIERS (§ 284*)—CARRIAGE OF PASSENGERS—STATIONS—APPROACHES.

> Where the sidewalk of a carrier around its station, which gave an ample entrance and exit was of concrete, and there were grass plots between the sidewalk and the street, the carrier was not bound to see that a beaten path across these plots, which did not belong to the carrier occasionally used by patrons of the railroad company, was safe, and so it was not liable for the act of third persons in the stringing of a wire across the path.

> [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1125–1135; Dec. Dig. § 284.*]

Appeal from Trial Term, Kings County.

Action by George M. Clyde against the Brooklyn Union Elevated Railroad Company. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, WOODWARD, and RICH, JJ.

Frederick N. Van Zandt (Joseph A. Burdeau, on the brief), for appellant.

D. A. Marsh, for respondent.

JENKS, P. J. This action is for negligence. The defendant, a common carrier of persons, maintained a passenger station in the borough of Brooklyn situate on the corner of East Sixteenth street and Avenue H, and fronting on the latter way with two entrances thereon. The plaintiff, seeking the single entrance which opened on East Sixteenth street, at 6:15 p. m. on a clear day in June, tripped upon a thin wire which had been stretched along a part of the curb of East Sixteenth street at a distance 10 or 15

---

inches above the ground. He now appeals from a judgment entered upon a verdict against him at Trial Term.

The plaintiff complained that these streets were public highways of the city of New York. The defendant denied the allegation as to East Sixteenth street. It also answered that it was in possession of said station and the land adjacent under a lease, and that all structures maintained by it were within the boundaries of that land. The learned court charged the jury without exception a request for further instruction that upon the proof it did not appear whether East Sixteenth street was a public or a private street, or whether it was land owned by private individuals. We may eliminate from the case the feature of an accident that occurred upon the premises of the defendant. The plaintiff complained that this wire had been set up by the defendant, but the defendant denied it. The instruction of the learned court, attacked by the defendant, considered in the light of the verdict, necessarily requires the conclusion by the jury that the defendant had not put up the wire. The learned counsel for the appellant writes in his points that, although it might be argued that the verdict was against the weight of evidence, "this point will not be pressed for the reason that the erroneous doctrine of the charge goes to the very core of the case and requires a reversal." I think that a verdict that rests upon the conclusion that the defendant did not put up the wire was not against the weight of evidence. The question, then, of the correctness of the instruction, must be determined in view of the facts that the place of the accident was not upon the premises of the defendant, and that the cause of the accident did not exist from any affirmative act of it. The instruction was that "the sole basis of your [the plaintiff's] claim rests upon establishing the fact that the railroad company put that wire up." The learned and able counsel argues against the correctness of it at great length, and with the citation of many cases. He states that the "fundamental question involved here" is, "would the railroad company be excused if the wire had been placed on the sidewalk by some third person not connected with the company? The answer of the authorities is emphatically in the negative." I proceed, then, to consideration of the cases cited by him.

In Cotant v. Boone Suburban Railway Company, 125 Iowa, 46, 99 N. W. 115, 69 L. R. A. 982, the end of the defendant's railway ran parallel to the right of way of a steam railway, and the two rights of way were separated by a wire fence. S., the owner of land south of the steam railway right of way, which land he used as a pleasure ground, built a stile over the fence. The plaintiff took one of the defendant's trains, rode to the western terminal, alighted from the car, saw this stile near where the train had stopped and attempted to pass over it, but caught his foot in consequence of the defective condition, and was injured. The defendant urged that, as it did not erect the stile, had not assumed control thereof, and had no right to enter upon the land of the steam railroad company for inspection or repair, it could not be charged with negligence in either construction or maintenance. The accident occurred on that part of the stile which was over and upon the right of way of the steam railroad company.

The court said that ordinarily the proposition of the defendant was true, but that it must be remembered that this contrivance was a single complete device which formed a continuous passageway, and, if defendant invited its passengers to use it, either expressly or by implication, it was bound to at least ordinary care to see that it was fit for the purpose; that the fact that the defendant could not go upon the grounds of the other railroad company was not controlling; that the defendant had the right to arrange for the construction of the stile and for permission for its passengers to cross its right of way, and, having invited the traveling public to use the device, it will not be permitted to say that it had not erected that part over the grounds of the steam railroad company. "This contrivance," say the court, "was used by defendant's passengers alone. * * * The use made of the stile was for the joint benefit of the defendant company and the owner of the pleasure grounds." And it was said that the jury was justified in finding, on account of its position and the manner in which the defendant stopped its trains and operated its road, that there was an implied invitation to its passengers to use the device.

In Skottowe v. Oregon Short Line, etc., Ry. Co., 22 Or. 430, 30 Pac. 222, 16 L. R. A. 593, the defendant's landing place was reached by a long elevated incline and a narrow roadway which rested upon timbers. This way was originally built by the defendant's predecessor in interest, and was then used as access to the landing place. At different times the defendant had rebuilt and repaired it, varied and changed it, and "exercised various acts of control over it." Part of the way was bridged and the land under it a public street, but only so far as it had been plotted out as such. The plaintiff fell from the bridge. It was said that the defendant was bound, not only to keep its platforms and landing places safe and convenient, but that it was bound to make the approaches over its own premises or premises in its possession and used in connection therewith safe and convenient, and that the liability is for a defect or obstruction in a way or passage over which he had been induced to pass for a lawful purpose by an invitation express or implied. And it was further said that it was the duty to furnish safe and proper means of ingress and egress, even though some part of it (i. e. the approach) be constructed upon a highway, "if the same be in their possession or under their control and used in connection with them."

In Delaware, Lackawanna & W. R. R. Co. v. Trautwein, 52 N. J. Law, 169, 19 Atl. 178, 7 L. R. A. 435, 19 Am. St. Rep. 442, the defendant maintained a depot building on a level with the track, and at the west end of the building there were steps for the accommodation of passengers leading to the public road. On the south side of the embankment there was a stairway built by private persons for their own convenience, leading, also, to the public road and used by the passengers. The stairway rested upon the embankment of the railroad. It was on the company's grounds and led to the public street, and there was a gravel walk from the top of the stairs to the depot building. "It was, apparently, a way provided as a means of access to and from the company's depot grounds." The court say that the passageway led

to the public street, and had every indication of having been provided for use by the public as a way to and from the station. And it is also said that:

"Under the charge of the court and the finding of the jury, it must be taken to be the fact that this way of passage was there by recognition, procurement, or consent of the company, and that by sufferance and use it had obtained such an appearance of a passageway passengers were invited to use, and that persons of reasonable judgment and discernment would conclude it to be a means of entrance and egress. It was of a passageway having these characteristics that the judge said that it was immaterial who built the stairway or who kept it in repair."

In Beard v. Conn. & Pass. Rivers R. R. Co., 48 Vt. 101, the plaintiff was at the defendant's station where there was a platform extending from the east side of the station to the track. She attempted to pass down certain stairs which led through the center of the station to the street. She thereby descended to a lower platform, and then fell from that platform to the street. The court considered that the head of the stairs were on the defendant's premises and were for the use of passengers, and said that it mattered not that the bottom of the "pitfall" was beyond the line of ownership of the defendant, for the easy descent had not been guarded at the top and that the defendant "owned and had exclusive control of the platform and stairs" relatively to the plaintiff.

In Exton v. Central R. R. Co., 62 N. J. Law, 7, 42 Atl. 486, 56 L. R. A. 508, the scene of the accident was a passageway from a door of the waiting room to the luggage room that ran along the station. It was conceded that this walk was a part of the station provided for the use of passengers, constructed for this purpose, and under the exclusive control of the defendant.

In Collins v. Railway Co., 80 Mich. 390, 45 N. W. 178, the platform about the station was so high that it could not be reached without a step. Some one set up a plank at the point where a well-beaten path reached the platform which was used to mount the platform ever since the station had been built. The plaintiff fell from the plank. The court say that:

"It grew into a common way. The station agent used it. Everybody used it. There was a well-beaten path leading to it. If a person approaching the station looked along the platform for a step upon which to ascend it, and saw none, there was the plank, with the beaten path, inviting him. * * * If, with full knowledge of the facts, it permitted an unsafe and dangerous means to be provided and used [it was liable] as if it had itself set up and maintained the dangerous way."

In Schlessinger v. Manhattan Railway Co., 49 Misc. Rep. 504, 98 N. Y. Supp. 840, the plaintiff tripped upon a stairway leading from platforms to the street, and the main defense was that a stairway was built and owned by the city of New York. There were other means of reaching the street. The defendant maintained a sign on its premises pointing in the direction of the stairway, and indicating that it afforded a means of access to the street. The court held that the duty of the defendant extended to such approaches even if constructed and owned by other persons, if continuously and naturally used by pas-

sengers, and that such use indicated an express or implied invitation by the carrier.

A subordinate proposition advanced by the appellant is that the question of ownership or title does not affect the liability of the carrier if the premises are used by passengers as approaches to the carrier's station with the latter's knowledge and acquiescence. I will consider the cases cited.

In Redner v. Lehigh & Hudson River R. Co., 73 Hun, 562, 26 N. Y. Supp. 1050, the locus in quo was a very narrow passageway leading to the platform. Two justices sat. Barnard, P. J., does not notice the point, and Pratt, J., but says that the allegation of the complaint that the plaintiff was on the platform of the defendant did not require for its support proof that the legal title was in the defendant, but that "it is sufficient if it used it in its passenger business," and "that was abundantly shown." Irvine v. Wood, 51 N. Y. 224, 10 Am. Rep. 603, involved the liability of a tenant for injuries received by a traveler on the street from a defective coal hole. That coal hole was used by the tenant to take down coal into a vault in his premises, and the lease provided that the premises were leased *"with the appurtenances."* (Italics in report, p. 225.) The liability rested upon the fact that the coal hole was appurtenant, and had been so used by the defendant. In York v. The Canada Atlantic Steamship Company, 22 Can. S. C. 167, the court expressly held that the defendant was in possession of the wharf where the accident occurred, as it had been rented for defendant's use to its agent, and was in the company's sole control under said lease. In Hammill v. Pennsylvania R. R. Co., 56 N. J. Law, 370, 29 Atl. 151, 24 L. R. A. 531, the place where the injury occurred was a "much-used path, on the property of the defendant," "maintained" by it. One citation from Thompson's Commentaries on the Law of Negligence (section 2680) reads:

"Nor does the state of the title of the premises make any difference with the duty of the carrier. Whether they are owned by him in fee simple, or held by him under a lease, or held under a lease made out to his agent, it is all the same, since his duty to keep them in a reasonably safe condition arises in consequence of the fact that he elects to use them in the discharge of his public duties as carrier."

The sole case referred to is that Canadian Case which I have just commented upon. The other (section 2700) contains illustrations, of which none seems to maintain this particular proposition. The rules of law are not in doubt.

[1] But the cases cited are precedents only when essential facts in this case are similar to the facts in the cases wherein those rules were applied. I fail to find such similarity. My conclusion requires a discussion of the facts in this record.

[2] The sidewalks on East Sixteenth street and on Avenue H. for about one-half their width from the curbs were laid out in grass plots. In the East Sixteenth street plot at least there were planted some shrubs. The other half of this sidewalk, extending from the line of the plot to the piazza of the station, was concrete. These plots did not extend on either street beyond the side line of the piazza upon the other street (if extended), so that for a considerable space at

the corner the sidewalk was all concrete from curbs to piazzas. There can be no dispute that there was ample access to the station at this corner without the obstruction of these ornamental grass plots. It is true that a person at some points in the roadway of East Sixteenth street in approaching the entrance on East Sixteenth street could travel in a direct or a diagonal line across the grass plot, and so save himself the few additional feet required to go first to the corner of the street where the sidewalk was all concrete. The plaintiff on the day in question, hastening to reach the depot, made this "short cut" across the plot. Other persons theretofore had done likewise, with the result that the grass had been somewhat worn in this plot opposite to the entrance on East Sixteenth street, so that a "path" was thereby defined. The plaintiff himself had taken this "cut" theretofore with impunity. It appears that some two weeks before this accident the wire had been extended at the curb over this "path," doubtless with the design to save the grass. But, as I have said, there is no proof that the defendant had set up this wire, or had adopted it or maintained it in any way. The "path" was not an appurtenant to its station, and did not appear physically to be one; for, after a person had crossed the "path," he came out upon the concrete sidewalk which extended all about the station, and there could not well be a continuation of the "path" across the grass over and across concrete. There is no proof but that there was ample, adequate, and easy access to the station from the corner, which was but a few feet distant. There is no proof that the defendant ever recognized this "path," or ever adopted it or ever maintained it. There is no proof that it ever indicated that it was a way of access to its station. And there is not evidence of implied invitation. It is true that there is proof that travel had worn away the grass at this point so as to define "a path," which had existed for some time, and that other persons had been seen to take this way by two ticket agents of the defendant. At most, all that could be brought home to the defendant by this proof was a mere passive acquiescence to this use of land near its station, but not within its property. In Sweeny v. Old Colony & Newport Railroad Company, 92 Mass. 368, 87 Am. Dec. 644, the court say:

"A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used."

See, too, Turess v. N. Y. Susq. & W. R. R. Co., 61 N. J. Law, 318, 40 Atl. 614.

I think that the instruction was properly made, in view of the record. If so, it is unnecessary to discuss the other exceptions which are urged against the judgment, which with the order must be affirmed, with costs. All concur.