ABBIE CARLETON

*vs.*

ROCKLAND, THOMASTON AND CAMDEN STREET RAILWAY.

Knox. Opinion April 7, 1913.

*Care. Damages. Due Care. Evidence. Injuries. Negligence. Ownership.
Passengers. Platform. Responsibility. Road Commissioners.
Superintendent. Tort. Reasonably Safe. Quasi Station.*

1.  That evidence of subsequent repairs was competent, not on the question
    of the defendant's prior negligence, but on the issue of fact whether it
    was the duty of the defendant to make the repairs. It was in the nature
    of an admission on that issue.
2.  That whether the defendant actually constructed and maintained the plat-
    form and steps or not, it had adopted them as a means of ingress to and
    egress from its cars and had by implication invited its passengers to use
    them in passing from the cars to the sidewalk and from the sidewalk to
    the cars, and had sanctioned such use.
3.  That the service for which the plaintiff paid the defendant included not
    only transportation in its cars to the point of destination, but if that point
    was a station either built and maintained, or adopted by the defendant, it
    also included the furnishing of a reasonably safe way by which she could
    leave that station.
4.  That the ownership of the steps cannot be the sole test. That is a fact
    which the traveling public cannot know and cannot be bound by. The true
    test is whether the carrier invited its patrons to use the steps; and if so,
    a liability existed until the steps were passed.
5.  That the same degree of vigilance is not required of the defendant dur-
    ing the exit from the grounds as during the transportation, the amount of
    care varying with the exigencies of the situation.
6.  That under the evidence in this case, the measure of care required of
    the defendant was not met, the steps being in an admittedly defective
    condition.

On report. Judgment for plaintiff for $500.

This is an action of tort, to recover damages for personal injuries
sustained by the plaintiff on October 1, 1911, upon alighting from

one of the defendant's cars, upon a platform and attempting to walk up a flight of three steps connecting the car track with the sidewalk in front of the Baptist church on Commercial Street in Rockport. The ownership of the steps was contested. The church, the town of Rockport and the railroad all deny responsibility for their maintenance. Plea; general issue. At the conclusion of the evidence, the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible, the Law Court to determine all questions of law and fact. If the court finds the plaintiff is entitled to recover, it is to assess the damages.

The case is stated in the opinion.

*H. L. Withee,* for plaintiff.

*A. S. Littlefield,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J. This is an action of tort to recover damages for personal injuries sustained by the plaintiff, on October 1, 1911, upon alighting from one of the defendant's cars upon a platform and attempting to walk up a flight of three steps, connecting the car track with the sidewalk in front of the Baptist Church on Commercial Street in Rockport.

The general situation was this: In front of the church, the street car line runs along the side of the street nearest the church and upon a level considerably below that of the sidewalk. The bank slopes down to the street and between the foot of this bank and the defendant's roadbed is the side ditch of the highway.

A platform rests at one end on the railroad bed and extends across the ditch to the bank and connected with it is a flight of three steps leading up to the sidewalk, that passes by the front of the church. This platform is five feet five inches long and the distance from the nearest rail, against which it is placed, to the lowest step is four feet, the steps being nailed to the platform, or "toe nailed" as one of the witnesses described it.

On this Sunday morning the plaintiff, a woman seventy-eight years old, was a passenger on one of the defendant's cars riding

from her house to the church, where she was a regular attendant. She requested the conductor to stop at the Baptist church, and he stopped the car at the platform. Mrs. Carleton, a companion, left the car first and the plaintiff followed. The plaintiff thinks that she, herself, stepped from the lowest step of the car, across to the lowest step of the flight, a distance of twenty-seven inches, that Mrs. Carleton placed her foot on the first step of the flight at about the same time, that the flight of steps being insecurely fastened tipped towards her, throwing her back against the car and causing the injuries complained of.

The defendant contends, that the plaintiff could not have stepped from the car directly upon the steps, but must have first alighted upon the platform. We are of the opinion that this contention is supported by the evidence and the circumstances and that in this respect the plaintiff is mistaken.

We will, therefore, consider the case on the assumption that the plaintiff had safely alighted on the platform and as she placed her foot on the first step, the entire flight tipped and caused her to fall.

The ownership of the steps is left somewhat in doubt. The treasurer of the church says that the church did not build them, and has never repaired them. The road commissioner of the town, says that during his term of service from 1908 to 1912, the town had made no repairs upon them and had not attempted to maintain them. The officers of the railroad deny all knowledge of their construction and disclaim all responsibility for their maintenance. It appears, however, that one end of the platform rests on the electric road-bed and close up to the rail, a condition that must exist by permission of the defendant. It further appears from the testimony of the road commissioner that at about the time of the accident employes of the defendant were lowering the grade of the track and excavating the ditch at and near these steps, and that during the progress of the work the steps themselves were taken out of place and set across the track. It is also in evidence that the defendant sent workmen to repair the steps within a half hour after the accident, and when the superintendent's attention was called to that fact in the course of a conversation with the plaintiff, his reply was, "That is where we were lame."

Such evidence of subsequent repairs was competent, not on the question of negligence, but on the issue of fact whether it was the duty of the defendant or of some one else to make the repairs. It was in the nature of an admission on that issue: *Readman* v. *Conway,* 126 Mass., 374; *Poor* v. *Sears,* 154 Mass., 539; *Skottowe* v. *Ry. Co.,* 22 Or., 430, 30 Pac., 222.

On the whole evidence we think it might fairly be inferred either that the defendant maintained the steps or had negligently weakened their support during the progress of its repairs on the road-bed and ditch, but the decision of this case does not necessarily turn upon either of these findings of facts. The law takes a broader view and asks whether by its own conduct, independent of original ownership or even of subsequent maintenance, the railroad company has, expressly or impliedly, invited the patrons of the road to use the structure as a means of ingress to and egress from its cars, has sanctioned such use and thereby has adopted the structure as a quasi station with approaches.

It is conceded that the platform and steps had existed in the same location ever since the electric railroad had been built, a period of nearly twenty years, and probably had been constructed at about this same time, because their chief purpose was to convene the passengers coming to or going from the church by rail. Other persons may have occasionally made use of them in crossing the street, but practically their sole use was in connection with the rail-road. It was in fact a regular stopping place, a quasi station for that public building. The defendant was not obliged to stop its cars at that point unless it wished to, because there was a cross street on either side of the church and the cars could have been halted at the intersection of those streets with Commercial Street instead of at this platform if the defendant had seen fit to do so, but all parties agree that both the traveling public and the defendant understood that this was the regular station for the Baptist church, and a request to stop at the church was always construed by the employes to mean, as in the present instance, a stop at this platform.

Under these circumstances what duty did the defendant owe to its passengers and especially to this plaintiff? The condition of the steps being defective, a point not controverted, was the defendant chargeable with such defect, or did its liability cease, as its learned counsel contends, when the plaintiff had alighted safely on the platform and was the next step at her own peril? These are the vital questions to be answered.

The plaintiff, being a passenger, the service for which she paid the defendant included not only transportation in its cars to the point of destination but if that point of destination was a station either built and maintained or adopted by the defendant, it also included the furnishing of a reasonably safe way by which she could leave that station, and reach the sidewalk. Or, stating it more specifically the defendant's liability did not cease when it had deposited this passenger on the platform, resting on the side of the embankment and several feet below the sidewalk, but included a reasonably safe exit from that platform to the sidewalk above. For that exit one way, and only one, had been provided, it matters not by whom, and the defendant was bound to see that that exit was reasonably safe and convenient. The ownership of the steps cannot be the sole test. That is a fact which the traveling public cannot know and cannot be bound by. The true test is whether the carrier invited its patrons to use the steps. If so a liability existed until the steps were passed.

We do not mean by this that the same degree of vigilance that attaches during transportation is required until the exit from the station or grounds is completed. The degree of care demanded varies with the exigencies of the situation. This distinction is drawn in *Maxfield* v. *Maine Central Railroad Co.*, 100 Maine, 79; *Rodick* v. *Same*, recently decided, 85 Atl., 41.

Nor are we to be understood as holding that the carrier is responsible for accidents happening to the passenger on the public street after she has safely alighted. Public streets are in no sense passenger stations. The electric railroad has no control over them, and hence it has been held that if the company has exercised proper care in its selection of a place for a passenger to alight in a public street, it is not in fault if the place proves in fact to be unsafe. *Conway* v. *L. & A. Horse R. R. Co.*, 87 Maine, 283; or if the plaintiff

stepped upon a rolling stone in passing between the car and the side-walk, *Same* v. *Same*, 90 Maine, 199, or fell into a trench while on the way to the sidewalk, *Lee* v. *Boston Elevated Ry.*, 182 Mass., 454. These are the authorities relied upon by the defendant in this case, but they are clearly not in point. As applied to passengers alighting from a car upon the public highway they are authorities, but not to passengers alighting upon a platform at a regular stopping place. So in *White* v. *L. A. & W. R. R. Co.*, 107 Maine, 412, it was held that while a passenger upon a street railway car ordinarily terminates the relation on alighting upon the public street, it is otherwise when the carrier has the duty to keep in repair the portion of the street upon which he alights—in that case a siding constructed by the railroad.

To say then, as is often said, "having alighted from the car, she was no longer a passenger," may be accurate when applied to a public street over which the carrier has no control, but should be qualified by adding that if the passenger alights upon a portion of the street over which the company exercises control, or upon a platform or station constructed and maintained, or adopted and used by the company and its patrons, all liability has not ceased, but the company is still bound to keep the station platform, or station and the exits therefrom, in a reasonably safe and suitable condition.

This question has often been before the courts and, so far as we have been able to investigate, the authorities are uniform.

Steam Railroad cases where liability has been held to attach:

Where a portion of the station platform was so arranged as to invite passengers to use it, although the proper mode of egress from the station to the nearest highway was in an opposite direction to that in which the passenger was going. *Keefe* v. *B. & A. R. R.*, 142 Mass., 251.

Where private parties had been permitted to construct and maintain a stairway leading from the public highway to the station grounds, although the company maintained another approach which was safe and convenient, *D. L. & W. R. R. Co.* v. *Trautwein*, 52 N. J. L., 169, 19 At 178.

Where there was a continuous platform joining the defendant's station with that of another road, which was used and intended to

be used for the transfer of passengers from one road to the other, the company was held liable for the safe condition of such platform, through its entire length, even upon the land owned by the other company. *L. N. A. & C. Ry. Co.* v. *Lucas,* 119 Ind., 338, 21 N. E., 968.

In *Chance* v. *St. Louis, I. M. & S. R. Co.,* 10 Mo. App., 351, the court held that passengers have a right to assume that a way to and from a train, it matters not by whom provided, is safe for ordinary transit. In *Collins* v. *Toledo, etc. R. R. Co.,* 80 Mich., 390, 45 N. W., 178, the company was held liable where the plaintiff in ascending the platform to the depot was injured by the falling of an unfastened plank, extending from the platform to the ground. This plank had not been placed there by the defendant but it had been adopted by the public as well as by the station agent because the company had provided no other step.

See also note to *Skottowe* v. *Oregon Short Line,* 22 Oregon, 430, 16 L. R. A., 593, and note to *Legge* v. *N. Y., N. H. & H. R. R.,* 197 Mass., 88, 23 L. R. A., N. S., 633.

Street Railway cases. Similar duties and responsibilities attach, and to the same extent:

In *Haselton* v. *Portsmouth, K. & Y. St. Ry.,* 71 N. H., 589, it did not appear by whom the platform upon which the accident happened was constructed or maintained but the court held that its adoption by the railroad and the invitation to the public to use it were sufficient to create legal responsibility.

In *Cotant* v. *Boone Sub. Ry. Co.,* 125 Iowa, 46, 69 L. R. A., 982, 99 N. W., 115, it was held that a railway which expressly or by implication invited its passengers to use a stile over a wire fence in leaving its grounds, was bound to use ordinary care in seeing that it was properly constructed and in good repair, although it was not erected by the company, and the defective part was not on its property but on the property of another, where it had no right to go to make inspection or repairs.

The basis of the decision is found in the following extracts from the opinion, which bear closely upon the case at bar: "This contrivance, while partly on or over the land of the Chicago and Northwestern Railroad Company, was a single complete device and

formed a continuous passage way over the fence; and if the defendant invited its passengers to use it, either expressly or by implication, it was bound to at least ordinary care in seeing that it was fit for the purpose intended.

"That it had no right to go upon the grounds of the Chicago & Northwestern R. R. Co. to make inspection or repairs is not controlling. Its passengers were not bound to ascertain at their peril what part of this stile was on the premises owned by another company, and what right defendant had to use it. Defendant undoubtedly had the right to make arrangements with this other company to cross its right of way; and, having invited the traveling public to use the device, it will not be permitted to say that it had no right to erect part of the contrivance upon grounds of another company. It will not do to say that the traveling public must inquire in such case as to the right the carrier had to pass upon the grounds of another company to make repairs. . . . Here there was no liability on the part of the steam railway company, but the situation was such as to make it natural for a person alighting from defendant's train as plaintiff did, intending to go to the bridge or to the pleasure grounds, to use the stile in passing over the fence. Defendant was bound to know that persons alighting from its trains would likely use this device in passing to their destination, and it was its duty to use at least ordinary care in seeing that it was properly constructed and in good repair."

Another very recent and strikingly parallel case is *Carter* v. *Rockford & I. Ry. Co.* (Wisc., 1911), 132 N. W., 598, where the facts were as follows: The plaintiff, a passenger on one of the defendant's cars, after alighting therefrom and while walking down a flight of steps leading from its right of way to a public street, was injured as a result of the breaking of one of the steps. Defendant's roadbed was elevated about four feet above the street. Eight years previous to the accident, with the consent of the company, one Townsend had placed a platform on the right of way, resting partly on the ties of the roadbed and running out almost to the street line and attached steps thereto. The top step was partly on the right of way and partly in the street. The remaining two or three steps were wholly in the street. Defendant had never made any repairs either on the platform or the steps. But other parties, with its

knowledge and consent had from time to time repaired them. The cars stopped there regularly to take on or let off passengers. The only way to reach the street from the platform was by these steps or by going down a steep bank.

There, as here, the defendant sought to escape liability on two grounds; first, because it was in no way responsible for the condition of the steps, having neither built nor repaired them nor assumed any control over them; and second, because the plaintiff had ceased her relations with it as passenger when she had safely alighted upon the platform. In answering these contentions, and holding the defendant liable, the Supreme Court of Wisconsin declare the true rule in these words:

"Neither ground is well taken. In order to board a car at Everett's Landing, it was necessary to pass from the street up onto the defendant's right of way. This could be done by using the steps or by going up the bank along a steep path. The steps were placed there for the convenience of patrons of the defendant road and for no other purpose. The defendant permitted the use of its right of way for the platform and at least a portion of the steps. That the greater part of the steps was in the street is of no consequence, for they were not put there for street purposes. The defendant received the beneficial use of both the steps and platform and practically adopted them as its own. They were necessary to enable passengers of the defendant to get to and from the street and were so used with the knowledge and acquiescence of the defendant. That being so, the fact that it had neglected its duty to repair them cannot discharge it from liability. It owed the duty to its patrons to see that a necessary, convenient, and accustomed passage of egress and ingress from and to its right of way, where it stopped to take on and let off passengers, to the street, was kept in a reasonably safe state of repair. This duty it could not delegate to others either specifically or by permitting them to make repairs."

These underlying principles, so clearly stated in the above opinion, are applicable with equal aptness and force to the case at bar, the facts in the two cases being essentially the same, and it is unnecessary to discuss the question of defendant's liability further. It is completely established.

The amount of damages that should be awarded is the only question left, that also being submitted to this court by the terms of the report, in case of defendant's liability.

The injuries consisted of one fractured rib, another rib loosened from the cartilage in front, and the surrounding muscles rendered very sore and sensitive. The physician made twenty calls, within a period of two months. Recovery has been satisfactory, except that she complains of pleuritic pains that may or may not be the result of this accident. Her claim for expenses and loss of work aggregates one hundred dollars. Considering these facts the age of the party, and all the other circumstances, it is the opinion of the court that a fair compensation would be five hundred dollars.

The entry therefore should be,

*Judgment for plaintiff for $500.*