MRS. PAUL CLINTON, Plaintiff in Error, v. TENNESSEE ELEC-
TRIC POWER CO., Defendant in Error.

and

PAUL CLINTON, Plaintiff in Error, v. TENNESSEE ELECTRIC
POWER CO., Defendant in Error.

Eastern Section.   May 20, 1929.

Petition for Certiorari denied by Supreme Court, October 12, 1929.

P. H. Thach and R. L. Denman, of Chattanooga, for plaintiff
in error. .

Brown & Spurlock, of Chattanooga, for defendant in error.

SENTER, J.  The parties will be referred to as in the court below.
Mrs. Paul Clinton and Paul Clinton, filed respective suits against the
defendants, Tennessee Electric Power Co., and the City of Chat-
tanooga.  The suit of Mrs. Paul Clinton was for alleged personal in-

juries resulting from a defective bridge adjacent to the right of way of the street car tracks of the defendant Electric Power Company, and the suit of her husband was for the loss of services and expenses resulting from the alleged injuries of his wife. The suit was voluntarily dismissed by the respective plaintiffs against the City of Chattanooga. The two cases were consolidated for the purposes of the trial, and tried before the same jury. At the conclusion of all the evidence the defendant moved for a directed verdict in the respective suits, and which motion was sustained, and the trial judge directed the jury to return verdicts in favor of the defendant in the respective suits, and dismissed the suits, at the cost of the plaintiffs.

A motion for a new trial by the respective plaintiffs was overruled. From the action of the trial judge in granting the motion for a directed verdict in favor of the defendant, and in overruling the motion for a new trial, both plaintiffs have appealed to this court in the nature of a writ of error, and have assigned errors.

It appears that Mrs. Paul Clinton resided on Milne street, in East Chattanooga, and had lived there for several months prior to the alleged injuries. She was a passenger on the street car of the defendant on September 30, 1927. The street car line runs practically north and south, and Milne street runs east and west. On the west side of the street car line where the same crosses Milne street, Milne street is an improved street up to the car line, but on the east side of the street car line Milne street has never been improved and never used as a street. It would appear that Milne street, so far as the same is used as a street, ends at the west side of the car line, and on the east side it is not used for vehicles, and is rough and unimproved. At the point where Mrs. Paul Clinton alighted from the street car, the defendant maintains a place for passengers to get off and on its cars. The plaintiff, Mrs. Paul Clinton, had gotten on the street car as a passenger, and when the car reached Milne street, she got off of the car at the usual and regular place where passengers are accustomed to get off. After getting off of the street car safely, she started east on the unfinished and unimproved Milne street. There was a small ditch running parallel with the street car line which also crossed Milne street, and across which there was a small bridge that was frequently used by persons traveling on Milne street east of the car line, and there was also a path that led down into and across the ditch, and this path was frequently used by persons traveling on Milne street east of the car line. The small bridge which crossed this ditch was not on the right of way of the street car line but appears to be a ditch which runs parallel with the car line and adjacent thereto. The defendant did not build the small bridge and had never kept it in

repair. It was not built for the purpose of enabling passengers to reach the car line, although it seemed to have been frequently used for that purpose. After plaintiff, Mrs. Paul Clinton, had gotten off of the street car and had started to her home on Milne street, she was crossing the little bridge when a plank in the bridge broke and she received her injuries by the fall resulting from the breaking of the plank in the bridge. It is unnecessary to refer to the nature and extent of her injuries, since the only question presented on the appeal is, the action of the court in directing verdicts in behalf of the defendant in the respective suits, and in dismissing the suits.

The assignments of error in behalf of the respective plaintiffs allege, that the trial judge was in error in directing verdicts in favor of the defendant, and under the assignments of error contend that under the undisputed facts the defendant, Electric Power Company, was liable for the damages resulting on account of the defective condition of the bridge. It being the contention of appellants that the defendant was under the legal obligation and duty of seeing that this little bridge, generally used by those going to and from the street car from the east side of the car line on Milne street, was kept in a safe condition for the use of persons patronizing the street car company and who had to use this bridge in going to the street car and in leaving the street car at that point. Numerous cases are cited and relied upon in support of the contention that the defendant owes a duty to its passengers of seeing that approaches to its stations are maintained in a safe condition. (East Tenn. R. Co. v. Watson, 94 Ala., 634; Watson v. Ocanna, 92 Ala., 320; Ga. Northern R. Co. v. Harwick, 12 Ga. App., 268; Cotant v. Boone, Sub. R. Co., 125 Iowa, 46; Carleton v. Rockland St. R. Co., 110 Me., 397; Collins v. Toledo Ry. Co., 80 Mich., 390, 10 C. J., 912-913.)

The plaintiffs invoke the principle and rule that it is the duty of a railroad company to provide safe means of access to and exit from its stations for the use of its passengers, and when it has set aside and established an approach to its depot for the use of the public having business with it, it assumes the duty of keeping the same reasonably safe for the use to which it was dedicated. The authorities above cited, and other authorities, announce the rule and principle as above stated, and we may add that it is a sound statement of the law when the facts justify the application of the rule as stated. However, this duty is generally applied to steam or commercial railroads where passenger stations and depots are maintained, and where such railroads provide the approaches to the station or depots. The duty of a railroad company as a carrier of passengers does not end when the passenger is carried safely to its destination, or more properly the passenger depot, but the car-

rier must also provide reasonably safe means of access to and from its passenger station so that passengers may have safe means of reaching and leaving the station. (Hassellton v. Portsmouth St. R. Co., 71 N. H., 589; Dela. R. Co. v. Trautwein, 52 N. J. Law, 169.)

In the instant case the street car company provided a safe place for passengers to alight at the particular point. Milne street was practically a blind street insofar as travel and traffic was concerned, ending at the west side of the street car line. It was an improved and travelled street west of the street car line. East of the street car line the street was not improved and was not used for vehicular travel. No sidewalks had ever been built on the street east of the car line. It was in a suburban portion of the City of Chattanooga. The street car company had never built any bridge or other approach on Milne street. It had never maintained the little bridge. It was under no legal obligation to build a bridge or to provide means for persons crossing the ditch to reach its cars at that point. It does not appear just who built the bridge, but it does appear that the defendant did not build it. It was not on the right of way or property of the defendant. It was used by persons walking on Milne street east of the car line and in crossing the car line as well as for those who got on and off of street cars near the point where it was built. Under these facts we do not think that the rule of liability as contended for by appellants can be applied.

The street car line occupied the center of Roanoke avenue. Milne street crossed Roanoke, and the street car company provided a safe place for passengers who were getting on or off its cars at the usual stopping place for cars at that point.

Ordinarily a street railway company has performed its full duty to its passengers if a safe place is provided for passengers to alight from or to board cars. (Street Ry. Co. v. Boddy, 105 Tenn., 666; 10 C. J., 912.) If the street car tracks are laid upon an unimproved street, it is required to maintain a reasonably safe place for passengers to alight from the street car in getting off of the car, and when this duty is discharged its liability ceases. It cannot be required of the street car company that it build approaches to its car line along unimproved streets or highways. If the street car company had built and maintained this little bridge approaching the car line at its usual place of stopping, it would have been an implied invitation to its passengers to use the bridge, and if an injury results because of the defective condition of the bridge so provided and maintained by the street railway company, it would be liable to the person injured. But such are not the facts in the present case. We think there is a decided distinction between the

duty of a steam railway company and a street railway company in the matter of providing safe approaches to stations. As was stated in Street Railway v. Boddy, supra:

"Where a common carrier has the exclusive control or occupation of its tracks and station, and can arrange and manage them as it sees fit, it may be properly held that a person intending to take passage upon, or leave, a train sustains the relation of a passenger in leaving or approaching the car at a station, but one who steps from a street railway car to the street is not upon the premises of the railway company, but upon a public place, where he has the same rights with every other occupier, and over which the company has no control. His rights are those of the traveler upon the highway, and not of a passenger."

Under the facts as disclosed by the record we are of the opinion that the learned trial judge was not in error in granting the motions for directed verdicts made in the respective suits, and in dismissing the respective suits.

It results that the assignments of error are overruled, and the judgment of the lower court is affirmed. Appellants will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.